401 F.2d 266
 Raymond K. FREED, Plaintiff,
v.
GREAT ATLANTIC & PACIFIC TEA CO., Defendant.
ERIE LACKAWANNA RAILROAD CO., Defendant and Third-Party
Plaintiff-Appellee,
v.
The WATSON TERMINAL AND WAREHOUSE CO., Third-Party
Defendant-Appellant.
Raymond K. FREED, Plaintiff,
v.
GREAT ATLANTIC & PACIFIC TEA CO., Defendant.
ERIE LACKAWANNA RAILROAD CO., Defendant and Third-Party
Plaintiff-Appellant,
v.
GREAT ATLANTIC & PACIFIC TEA CO., Defendant-Appellee.
 Nos. 18246, 18247.
 United States Court of Appeals Sixth Circuit.
 Sept. 9, 1968.
 
 Russell E. Leasure, Cleveland, Ohio, for Watson Terminal and Warehouse Co., Baker, Hostetler & Patterson, Cleveland, Ohio, on brief.
 John Ranz, Youngstown, Ohio, for Erie Lackawanna Railroad Co., Manchester, Bennett, Powers & Ullman, Youngstown, Ohio, on brief.
 Jack C. Harris, Youngstown, Ohio, for Great Atlantic & Pacific Tea Co., Wilson & Wyatt, Youngstown, Ohio, on brief.
 Before O'SULLIVAN and EDWARDS, Circuit Judges, and CECIL, Senior Circuit Judge.
 EDWARDS, Circuit Judge.
 
 
 1
 These are suits by plaintiff Erie Lackawanna Railroad Co. against The Watson Terminal and Warehouse Co., the owner and lessor of a warehouse, and Great Atlantic & Pacific Tea Co., the lessee and operator of the warehouse. The warehouse was serviced by an Erie railroad sidetrack under a basic written agreement with Watson and a supplementary agreement signed after A & P leased the premises.
 
 
 2
 Before this litigation was initiated, and Erie employee, Raymond K. Freed, had been injured while riding a freight car on this sidetrack as a result of a pile of ice placed by A & P employees too close to the tracks. Freed sued Erie and A & P for his injuries. Erie and A & P settled Freed's claim by each paying half of a $75,000 settlement. This settlement was made, however, without prejudice to Erie's claims against A & P and Watson.
 
 
 3
 Erie meantime had filed a third-party action against Watson. In this action (herein appeal No. 18,246) Erie sued on the basic and supplementary sidetrack contracts claiming that defendant Watson was thereby made responsible for indemnifying Erie for any losses occasioned by failure of proper clearances. In the second action (herein appeal No. 18,247) Erie cross-claimed against A & P, claiming that A & P was either solely negligent in causing Freed's injuries, or at least that A & P was the sole party guilty of active (as opposed to passive) negligence in causing the injury.
 
 
 4
 Erie's cross-claim against A & P was submitted to a jury before the United States District Court for the Northern District of Ohio, Eastern Division. After trial the jury found for defendant-appellee A & P, and the District Judge denied Erie's motion for judgment n.o.v. or for a new trial. Erie appeals.
 
 
 5
 Erie contended below and argues here that A & P's placing of the pile of ice adjacent to the track was active negligence and was directly responsible for Freed's injury. It relied upon the American Law Institute's RESTATEMENT OF RESTITUTION 95 (1937).[1] It contends that at most Erie could only be charged with 'passive' negligence for failure to discover or eliminate the dangerous condition. The District Judge answered this contention:
 
 
 6
 'What Erie fails to give recognition to is the fact that the evidence clearly shows that notwithstanding the presence of the extremely dangerous condition Erie nonetheless caused its train to be moved forward. Absent such movement, it is clear that Mr. Freed would not have sustained personal injuries. If, in causing the train to be moved, the employees of Erie either knew or in the exercise of ordinary care should have known that Mr. Freed would thereby the exposed to grave peril by reason of the close clearances, their movement of the train under such circumstances would clearly constitute 'active' negligence.'We believe that the movement of this train with a brakeman on the side of a car, while a pile of ice was there to be seen, too close for the brakeman to clear it, constituted facts from which both the jury and the District Judge could properly have concluded that Erie was guilty of active negligence and hence not entitled to recover on its cross-claim against A & P. As to this appeal (No. 18,247), the judgment of the District Court is affirmed.
 
 
 7
 Erie's third-party suit on contract against Watson was the subject of a stipulation between the parties for submission of the cause for decision of the District Judge without a jury on stipulations and the record developed during the trial of the Erie suit against A & P.
 
 
 8
 Erie's primary reliance was on Note #3 of the basic 1956 Sidetrack Agreement which provided:
 
 
 9
 'Note #3
 
 
 10
 'The Industry agrees not to hereafter permit any object or structure over the sidetrack at less than twenty-one feet above top of rail, or alongside of the said sidetrack at less than six feet from the nearest rail, with the necessary additional clearance on curves.
 
 
 11
 'The Railroad Company, however, consents to the continuance of the various now existing close side clearances in variance with laws of the State of Ohio, which have been approved by The Public Utilities Commission of Ohio in accordance with its Orders Nos. 1592, 1593 and 1594, dated April 4th, 1955, and those in variance with Railroad Company's prescribed standard of six feet (6') from the near rail, said clearances being shown and tabled on said blueprint plan, which deviations from its standard are consented to by the Railroad Company, and in consideration of which the Industry hereby assumes all responsibility for and agrees to indemnify and hold harmless the Railroad Company for loss, damage or injury to the person or property of either of the parties hereto and their employes or to the person and property of any other person or corporation which may be caused as a result of the existence of said close clearances of less than the Railroad Company's standard.'
 
 
 12
 Watson argued that the language just cited did not represent 'clear and unequivocal' assumption by Watson of damages resulting from Erie's own negligence. Watson also pointed to Note #6 of the 1956 agreement, which originally read:
 
 
 13
 'Note #6
 
 
 14
 'The Industry also agrees to indemnify and hold harmless the Railroad Company from loss, damage or injury resulting from any act or omission of the Industry, its employes or agents, to the person or property of either of the parties hereto and their employes and to the person or property of any other person or corporation, while on or about said sidetrack unless caused by the sole negligence of the Railroad Company; and if any claim or liability, other than from fire or from the existence of the aforesaid close clearances and said coal pit, shall arise from the joint or concurring negligence of both parties hereto, it shall be borne by them equally.'
 
 
 15
 This claim was amended in the 1957 agreement to read:
 
 
 16
 'The Industry also agrees to indemnify and hold harmless the Railroad Company for loss, damage or injury from any act or omission of the Industry or of the licensee, or the employes, agents or servants of either or both of them, to the persons or property of either of the parties hereto or of the licensee, or any two or more of them, or to the person or property of any other person or corporation, while on or about said sidetrack; and if any claim or liability other than from fire shall arise from the joint or concurring negligence of the parties hereto and the licensee, or of the Railroad Company and either the Industry or the licensee, it shall be borne equally by the parties hereto.'
 
 
 17
 The District Judge found for purposes of this case that Erie's movement of the train when it knew or should have known of the existence of the close clearance ice pile was active negligence on the part of Erie.
 
 
 18
 The District Judge then found for Erie, reasoning as follows:
 
 
 19
 'In an attempt to distinguish the New York Central case,[2] Watson urges that the hold harmless portion of Note 3 applies only to those deviations from standard clearances which existed on the date the agreement was executed, and that in the case of subsequent deviations reference must be made to Note 6 in order to determine Erie's rights.
 
 
 20
 'Aside from the fact that the hold harmless portion of Note 3 seems to make reference to those deviations which existed on the date the agreement was executed, it seems entirely unreasonable to conclude that either Watson of Erie intended that existing deviations be treated in a different manner than those which might occur subsequently. Under the construction urged by Watson, Erie would necessarily be required to establish negligence on the part of Watson in order to recover any loss it sustained by reason of a breach by Watson of its contractual obligation not to allow any object within six feet of the nearest rail. Such a construction would render said contractual obligation practically meaningless.
 
 
 21
 'It seems clear that the purpose behind the clearance provision of Note 3 was to protect Erie from the great risk presented by deviations from standard clearances. It is axiomatic that the close clearances that existed at the time the agreement was executed presented risks identical to those which would be presented by subsequent deviations.'
 
 
 22
 Subsequent, however, to the District Court's decision in this case, this court decided a case involving general principles of interpretation of indemnity agreements which are applicable here. In Brogdon v. Southern Ry., 384 F.2d 220 (6th Cir. 1967), we said:
 
 
 23
 'In paragraph 4 of the indemnity agreement Foote undertook to save Southern harmless from any violations of the clearance agreement which required 22 foot clearance above the rail level of all structures. The language of paragraph 4, however, makes no reference to saving Southern harmless from Southern's own negligence. The majority view is that such indemnity agreements should not be extended to indemnify the indemnitee's own negligence unless the language is clear and unambiguous. Kroger Co. v. Giem, 215 Tenn. 459, 387 S.W.2d 620 (1964); General Accident Fire & Life Assurance Corp. v. Finegan & Burgess, Inc., 351 F.2d 168 (C.A.6, 1965). It would have taken little time for a Southern Railway attorney to have added the words 'including damage from indemnitee's own negligence' to the language of paragraph 4.' Brogdon v. Southern Ry., 384 F.2d 220, 223 (6th Cir. 1967).
 
 
 24
 In this diversity action Ohio law applies, and the leading Ohio case on interpretation of such contracts is George H. Dingledy Lumber Co. v. Erie R.R., 102 Ohio St. 236, 131 N.E. 723 (1921). In it the Ohio Supreme Court took a similar strict view of interpreting indemnity contracts pertaining to the indemnitee's own negligence:
 
 
 25
 'It is a fundamental rule in the construction of contracts of indemnity that such a contract shall not be construed to indemnify against the negligence of the indemnitee, unless it is so expressed in clear and unequivocal terms.' George H. Dingledy Lumber Co. v. Erie R.R., 102 Ohio St. 236, 242, 131 N.E. 723, 725 (1921).
 
 
 26
 See also Kay v. Pennsylvania R.R., 156 Ohio St. 503, 508, 103 N.E.2d 751 (1952).
 
 
 27
 When we read Note #3 of the Erie-Watson sidetrack contract, we do not find 'clear and unequivocal' language by which Watson undertook to save Erie harmless from the consequences of Erie's own negligence. The words 'said close clearances' might refer either to the existing variances discussed in the same second paragraph of Note #3 where the quoted words are found, or these words might refer back to the first paragraph of the same Note where Watson undertook not to permit any obstruction (presumably other than existing ones).
 
 
 28
 Actually, acceptance of the first of these alternatives seems to us mandatory when we read the second paragraph of the 1957 Supplemental Agreement. By it Watson does undertake to hold Erie harmless as to ' any claim or liability' (including apparently claims arising from such a close clearance as was involved herein). But its undertaking is limited specifically to bearing one-half of such a claim when the claim arises 'from the joint of concurring negligence of the parties hereto and the licensee, or of the Railroad Company and either the Industry or the licensee.'
 
 
 29
 Since Erie has only paid one-half ($37,500) of the Freed claim and the licensee paid the other half, we believe that the District Court was in error in awarding judgment for Erie in the sum of $41,969.75. Erie's recovery against Watson must be limited to one-half of the medical expenses thus far borne exclusively by Erie, plus interest thereon.
 
 
 30
 The judgment of the District Court in appeal No. 18,246 is vacated and the case is remanded for entry of judgment in accordance with this opinion.
 
 
 31
 As we have previously noted, the judgment of the District Court in appeal No. 18,247 is affirmed.
 
 
 
 [1]
 'Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, it was the other's duty to make safe, he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, unless after discovery of the danger, he acquiesced in the continuation of the condition.' RESTATEMENT OF RESTITUTION 95 (1937)
 
 
 [2]
 New York Central Railroad Co. v. General Motors Corp., 182 F.Supp. 273 (N.D. Ohio, 1960)