**TROPIC PLUMBING, INC., Plaintiff**

**v.**

**THOMPSON–STARRETT INTERNATIONAL, INC., and MARYLAND CASUALTY COMPANY, Defendants**

Civil No. 340-1967

District Court of the Virgin Islands

Div. of St. Thomas and St. John

March 12, 1971

*See, also, 325 F.Supp. 449*

---

[7] See, Virginia Railway Co. v. Federation, 300 U.S. 515 (1937); Chapel v. Allen, 334 Mich. 176, 54 N.W.2d 209 (1952); Munce v. O'Hara, supra.

CORNEIRO and GIBBS, ESQS. (HOWARD K. GIBBS, ESQ., of counsel), *for the plaintiff*

BIRCH, DEJONGH and FARRELLY, ESQS. (ALEXANDER A. FARRELLY, ESQ., of counsel), *for the defendants*

CHRISTIAN, *Chief Judge*

## MEMORANDUM OPINION

This action for debt is before the Court on plaintiff's motion for summary judgment.

From plaintiff's amended complaint, it would appear that on December 11, 1964, Thompson-Starrett International, Inc. (hereinafter Thompson-Starrett or general contractor) entered into a contract with Bluebeard Housing Corporation for the construction of the Bluebeard Hill Housing Project. This construction contract was labeled FHA Project Number 056-55007 (hereinafter prime contract). On February 5, 1965, Thompson-Starrett contracted with plaintiff to perform specified plumbing work required in the Bluebeard Hill project for an agreed sum. Between August 25, 1965, and October 24, 1966, Thompson-Starrett issued change orders, pursuant to the contract terms, resulting in a net increase in the contract price. Plaintiff admits receiving partial payment of this sum, but it here claims that $24,123.63 of the total contract price, as adjusted, remains unpaid.

In addition to its claim on the contract, plaintiff adds a further ground for relief growing out of the following facts. Thompson-Starrett was required to submit to the Federal Housing Administration (hereinafter FHA) a certificate stating its unpaid obligations, which certificate included the plaintiff's claim for the unpaid balance of his contract price. The pertinent regulation, 24 CFR 221.558, states that "such certification should be final and incontestable." Plaintiff asserts, therefore, that such certification, in fact filed by Thompson-Starrett, should bind Thompson-Starrett in this action. The complaint also contains a claim against Maryland Casualty Company, Thompson-Starrett's surety on a dual obligee bond applicable to the contract.

On November 3, 1969, this Court entered a pre-trial order pursuant to Rule 16, Federal Rules of Civil Pro-

cedure. This order shows that the parties do not dispute (1) the existence and validity of their original subcontracting agreement, (2) that the ten change orders were executed by the parties, and that they specify the work to be done and the cost thereof, (3) that the work stated in the change orders was performed and accepted, (4) that plaintiff has not been paid for this work, and finally, that the amount certified to the FHA as due to plaintiff has not been paid. The amount of the contract price that remains unpaid is not disputed.

The issues, as framed by the pre-trial order, involve the validity of the ten change orders. Defendant contends that the prime contract, incorporated by reference in the subcontract, provides that payments for "extras" are forbidden, unless they are approved in writing by the FHA. It asserts that the said change orders covered "extras" within the meaning of the prime contract, and that since these change orders were issued without the approval of the FHA they are invalid.

The unpaid amount attributable to the change orders is substantially less than the total amount of the contract price that plaintiff asserts remains unpaid. The balance represents amounts to be held in retainage, by the terms of the contract, until final payment by the owner to Thompson-Starrett. The pre-trial order established that Thompson-Starrett has received its final payment on the prime contract. Hence this dispute relates only to payment of the amount attributable to the ten change orders.

Relevant portions of the prime contract have been submitted for the consideration of the Court. The subcontract, the certificate submitted to the FHA, the dual obligee contract bond, and the ten change orders were likewise submitted.

Among the pertinent provisions of the subcontract are the following:

235

4. The Subcontractor shall be entitled to receive no extra compensation for changes or extra work of any kind whatsoever regardless of whether the same was ordered by the Contractor or any of its representatives, unless such extra order is given in writing signed by an officer of the Contractor, and the Subcontractor agrees that it will make no claim that it was authorized to do any extra work or make any modification in its Work by the Contractor or any of its representatives at the site or elsewhere, and if such work was so ordered and the Subcontractor has performed the same but has received no written order therefor as herein provided for, the Subcontractor shall be deemed to have waived any claim for extra compensation therefor regardless of any written or verbal protests or claims by the Subcontractor.

\*        \*        \*

7. a. In the event that the Owner, or the Contractor, requires the performance of extra work or changes in the Work as the Owner, or the Contractor, may find necessary or desirable in so far as such extra work or changes in the Work affect the Work to be performed by the Subcontractor hereunder the amount of compensation to be paid to the Subcontractor shall be determined as follows: (there follows four alternative means of determining the price).

8. The Subcontractor shall be bound by the decision of those authorized by the General Contract as to the meaning of any terms and conditions of the General Contract Documents as the same may affect the Work hereby let to the Subcontractor. The Subcontractor shall comply with all the terms of the General Conditions made part of the General Contract Documents and of all the other terms and conditions of any of the other General Contract Documents to the Work of the Subcontractor, and the Subcontractor hereby agrees that the Contractor shall have the same power as regards terminating this agreement that the Owner may exercise over the Contractor under any of the provisions of the General Contract Documents.

9. The Subcontractor hereby assumes towards the Contractor all the obligations and responsibilities that the Contractor has assumed under the General Contract towards the Owner, and the Subcontractor hereby agrees that all the limitations and duties to which the Contractor is bound to the Owner by the terms of the General Contract shall be deemed the limitations and duties to

which the Subcontractor in turn shall be bound to the Contractor. . . .

The following provision appears in the prime contract:

All requests for changes in the Drawings and Specifications must be in writing signed by the Owner and the Lender and shall be conditioned upon acceptance by the (Federal Housing) Commissioner, which acceptance may be subject to such conditions and qualifications as the Commissioner in his discretion may prescribe, it being understood that the Commissioner at all times has the right to require compliance with the original Drawings and Specifications. (Parenthetical added.)

The parties have submitted the matter on the documents now before the Court without argument. Those documents, including the pleadings and the pre-trial order, raise a single issue of law, namely whether the failure of the general contractor to obtain the approval of the FHA for its otherwise unchallenged change orders, permits it to avoid payment for work done by the subcontractor in conformance with those change orders.

■ Plaintiff argues that the condition as to prior approval of change orders by the FHA has been waived or otherwise excused by Thompson-Starrett's acceptance of the work performed under the change orders.[1] However, I do not reach this question because I find that the subcontract cannot be reasonably read to impose such a condition on plaintiff's right to payment for work performed at the direction of Thompson-Starrett.

Each of the change orders in question complied with the requirements of paragraph 4 of the subcontract, quoted above, that all change orders be in writing and signed by an officer of Thompson-Starrett. Compliance with these specific terms of the contract must prevail over terms that defendants wish to read into the subcontract through the

---

[1] Waiver of this kind of condition has been held to be a question for the trier of fact. Ross Engineering Co. v. Pace, 153 F.2d 35, 49–50 (4th Cir. 1946). Therefore, resolution of the waiver issue would be inappropriate at this stage.

catch-all term providing for plaintiff's assumption of the general contract.

■ The prime contract provision, quoted above, requiring acceptance of change orders by the FHA is intended to benefit the owner who is unable to obtain a low interest FHA insured mortgage for facilities that have not been approved by the FHA. Cf. 24 CFR §§ 221.530(a) and 221.550(b). The purpose of this provision is to exact conformity with the FHA approved plans by denying payment to the general contractor for any unapproved facilities. By its terms this provision binds only the general contractor. It is clearly of no consequence to the owner whether anyone other than the general contractor is bound by the provision, since it is only to the general contractor that payments are made.

The defendants now argue that in assuming the general contract, the plaintiff also assumed the risk of non-payment for work unapproved by the FHA. It is clear that extension of the prime contract provision to bind the subcontractor does not further the original purpose of the provision to protect the owner. It would operate only to the benefit of the general contractor. This interpretation would lead to two results, as unusual as they are unreasonable. First, defendant's interpretation would require the plaintiff to indemnify Thompson-Starrett for its own failure to obtain prior FHA approval of its change orders. Second, because of its potential liability for unapproved work, the subcontractor would be forced to assume responsibility for interpreting and enforcing the prime contract against his general contractor. The assumption of the general contract term is too slender a reed to bear the weight of the conclusion that these were the consequences intended by the parties.

If Thompson-Starrett intended that plaintiff should assume the risk of its failure to obtain prior FHA approval of change orders, this should have been more clearly expressed. A party should not be held to suffer the consequences of another's mistakes, unless he has clearly and unmistakeably agreed to do so. See, e.g., Freed v. Great Atlantic & Pacific Tea Co., 401 F.2d 266, 269–70 (6th Cir. 1968) (contract not construed to indemnify against negligence of indemnitee unless so expressed in clear and unequivocal terms). I do not find such a clear agreement in this case.

The second consequence stated above is inconsistent with the reasonable expectations of the parties as well as the express terms of the contract. The first sentence of paragraph 8, quoted above, indicates that the subcontractor is bound by another's interpretation of the general contract documents. Therefore, the conclusion that work requested by the general contractor falls within the provisions of the general contract documents could not be questioned by the plaintiff. Moreover, the quoted portions of paragraphs 4 and 7 clearly indicate that plaintiff was to perform extra work when required by either the owner or the contractor.

Nothing in the specific terms of the subcontract suggests that Thompson-Starrett could not properly contract with the plaintiff for extra work without prior approval of the owner or the FHA. Nothing in the specific terms of the subcontract suggests that plaintiff would not be paid for extra work performed as directed by change orders executed in accordance with paragraph 4 of the subcontract. If Thompson-Starrett wished to import the condition of prior FHA approval into the subcontract terms pertaining to change orders, as draftsman it was obliged to express its intent in more specific fashion than through a term providing for the subcontractor's assumption of the general contract.

■■ Finally, I note that two of the disputed change orders, representing work valued at more than $6,700, purport on their face to be issued "per direction of FHA" or "per order to conform to standards by FHA." As to these orders, the defendant cannot now be heard to argue that it did not in fact have the approval of the FHA. It is an elementary rule of law that one who has made a representation of fact to another, upon which the other relies to his prejudice, is estopped from denying the truth of the fact in a later controversy between the parties. 12 Williston on Contracts § 1508 (3rd Ed. 1970).

Plaintiff is entitled to judgment for the full unpaid portion of the contract price, $24,123.63.