BAHAMAS AGRICULTURAL INDUS-TRIES LIMITED, and FM, Ltd., Plaintiffs-Appellants,

v.

RILEY STOKER CORPORATION, Defendant-Appellee.

BAILEY METER COMPANY, Defendant-Third-Party Plaintiff-Appellee,

v.

OWENS–ILLINOIS, INC., and Peabody Engineering, Third-Party Defendants.

Nos. 75–1148 to 75–1150.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 29, 1975.

Decided Dec. 12, 1975.

---

**17.** *See* note 3 *supra.*

**1176**

Lawrence Zelle, Robins, Davis & Lyons, Robert M. Wattson, Minneapolis, Minn., Thomas L. Dalrymple, Fuller, Henry, Hodge & Snyder, Toledo, Ohio, for plaintiffs-appellants in 75–1148.

Thomas J. Manahan, Finn, Manahan & Pietrykowski, Jamille G. Jamra, Eastman, Stichter, Smith & Bergman, Toledo, Ohio, for defendant-appellee in 75–1148.

Lawrence Zelle, Minneapolis, Minn., for Bahamas and FM, Ltd.

Thomas J. Manahan, Toledo, Ohio, for Riley Stoker Corp.

Jamille G. Jamra, Toledo, Ohio, for Bailey Meter Co.

Thomas J. Manahan, Finn, Manahan & Pietrykowski, Toledo, Ohio, for appellant in 75–1149.

R. Paul Wingart, Toledo, Ohio, Lawrence Zelle, Robert M. Wattson, Minneapolis, Minn., for appellees in 75–1149 and 75–1150.

Jamille G. Jamra, Eastman, Stichter, Smith & Bergman, Toledo, Ohio, for appellant in 75–1150.

Before PHILLIPS, Chief Judge, WEICK, Circuit Judge, and HARVEY, District Judge *.

WEICK, Circuit Judge.

Bahamas Agricultural Industries Limited (BAIL) and its insurer, plaintiffs-appellants, have appealed from a judgment of the District Court entered upon a directed verdict in favor of defendant, Bailey Meter Company (Bailey Meter), and from a judgment setting aside a jury verdict in their favor and dismissing their complaint against defendant, Riley Stoker Corporation (Riley Stoker), for an alleged inconsistency between the jury's verdict and the jury's answer to an interrogatory.

---

* The Honorable James Harvey, Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

The suit in the District Court was a complex diversity action arising out of an explosion of a steam boiler on Abaco Island, Bahamas, which boiler was newly purchased by BAIL from the defendants, the explosion causing property damage in the stipulated amount of $725,895. Riley Stoker was the manufacturer of the boiler and Bailey Meter was the manufacturer of the instrument panel designed to operate the boiler. The suit was for the damages suffered by BAIL and its insurer arising out of the defendants' alleged negligence, breach of express and implied warranties, breach of contract and strict liability.

Both Riley Stoker and Bailey Meter had agreed to provide the services of "start-up engineers", in a consulting capacity, to perform certain tests which were prerequisite to starting the operation of the new boiler. The explosion occurred while a service representative of appellee Bailey Meter (Glen Ocheskey) was monitoring the boiler controls. Ocheskey had determined from the instrument panel that something was wrong with the boiler, and had gone to find someone who worked for BAIL to determine how to proceed. The explosion occurred before they returned.

There was a factual dispute as to whether the service representative of Riley Stoker (Jesse Odom) was charged with monitoring the flame. It was crucial that the flame be monitored because the automatic safety devices controlling the operation of the Maxon valve, which regulated the flow of fuel oil to the boiler, were disengaged by Ocheskey, and changed to manual control when he had observed the reappearance of an abnormal air cycling problem, which he knew could be dangerous. However, it is undisputed that no one was monitoring the flame at the time of the explosion; that there was a flame out; and that there was a subsequent loss of pressure in the boiler. Because of the open Maxon valve, fuel oil continued to be sprayed into the burner chamber where it vaporized into an explosive mixture which was ignited by the hot walls of the combustion chamber.

This case is governed by Ohio conflicts of law. Both parties, pursuant to Ohio law, stipulated that the Bahamian comparative negligence statute should be applied in this litigation. Ohio Rev.Code § 1301.05(A).

The District Court granted defendant, Bailey Meter's motion for a directed verdict. In addition, the District Court directed a verdict for defendant, Riley Stoker, on the issues of contract and express and implied warranty, but denied the motion to direct a verdict with respect to the issue of negligence.

The jury returned a general verdict in favor of plaintiffs and against Riley Stoker, and answered special interrogatories submitted by the Court. The District Judge determined that the answers to the interrogatories were inconsistent with the general verdict, and he entered judgment in favor of Riley Stoker pursuant to Fed.R.Civ.P. 49(b).

For the reasons hereinafter stated, we reverse the judgments of the District Court with respect to defendants, Riley Stoker and Bailey Meter, and remand to the District Court for a new trial. In addition, the third-party pleadings, which were dismissed by the District Court, are hereby reinstated. The motion to dismiss the appeal is denied.

I

BAILEY METER

The District Judge directed a verdict for Bailey Meter on the ground that BAIL failed to establish a prima facie case in that it offered no evidence of a standard against which the jury could judge the conduct of Bailey Meter's service representative Ocheskey. The District Judge relied on *Republic Light & Furniture Co. v. Cincinnati*, 97 Ohio App. 532, 127 N.E.2d 767 (1954), for the proposition that whenever the standard of care appropriate in a given situation is not within the common knowledge of the jury the burden is on the plaintiff to

introduce substantial evidence proving the appropriate standard of care.

■ In our opinion the District Judge erred in his interpretation of Ohio law. The Supreme Court of Ohio has declared that there is no general rule or policy in Ohio which requires expert testimony as to the standard of care in a particular case. *Thompson v. Ohio Fuel Gas Co.,* 9 Ohio St.2d 116, 224 N.E.2d 131 (1967). In *Thompson* the trial court had directed a verdict for the defendant Gas Company in a wrongful death action arising out of an explosion which occurred when a county employee was engaged in routine maintenance work on a ditch. The trial court directed the verdict for the defendant on the ground that the evidence failed to show a standard of care against which the defendant's conduct might be judged. The Supreme Court of Ohio specifically rejected the contention that affirmative evidence of standards of care need be presented even when all of the factors involved in determining the appropriate standard of care in a particular case are not obvious to and readily understandable by a lay jury. *Id.* at 117–18, 224 N.E.2d 131.

■ The holding in *Thompson* clearly is consistent with other Ohio authority on the law of negligence. These cases have held that proof of a party's conformance with custom or usage in a particular trade is not conclusive on the question of negligence, although it may be considered as evidence of whether the defendant exercised ordinary care. *Hageman v. Signal L. P. Gas, Inc.,* 486 F.2d 479 (6th Cir. 1973); *Davidson v. Toledo Home Tel. Co.,* 5 Ohio App. 237 (1915).

■ To require an affirmative showing of evidence establishing a standard of care for service representatives belies the tangential significance of evidence of custom and usage. Evidence of custom and usage going to the issue of the appropriate standard of care is not necessary to establish a prima facie case of negligence under Ohio law; thus the absence of affirmative evidence of an appropriate standard of care necessarily constitutes an insufficient basis for directing a verdict against the plaintiff in this case.

■ Ohio cases in the area of tort law have established that unless a standard of conduct has been created by legislative enactment or judicial decision the standard of care required is that of a reasonably prudent person under the same or similar circumstances. *Eisenhuth v. Moneyhon,* 161 Ohio St. 367, 119 N.E.2d 440 (1954).

■ This general standard of care is applicable to the conduct of Glen Ocheskey. The jury was provided with testimony of both Thomas O'Donnell, an engineering specialist employed by Owens-Illinois, the parent corporation of BAIL, and Ocheskey himself, as to the responsibilities of a service representative and as to what a person knowledgeable in the operation of boiler controls should have known or should have done when presented with the prolonged loss of pressure in the boiler. It was within the province of the jury to ascertain the facts and circumstances surrounding Ocheskey's conduct and to determine the question of whether that conduct was negligent, utilizing the standard of care of a reasonably prudent person in the situation in which Ocheskey found himself.

On appeal an issue has been raised by Bailey Meter as to the effect to be given to a limitation of liability provision appearing in the form (SM42–1066) used by it to establish the conditions governing its service outside the United States.

BAIL contends that SM42–1066 was not adopted by the parties in its entirety, and that only the portion of SM42–1066 referring to Class "D" Service became part of the contract between BAIL and Bailey Meter. BAIL maintains that the provision in SM42–1066 limiting Bailey Meter's liability for the actions of its service representatives was not incorporated into the contract itself.

The language on which BAIL relies is contained in Change Order No. 2 (Exhibit D), which established the agreement between BAIL and Bailey Meter with regard to furnishing a service representative to perform start-up procedures on the boiler. The relevant language provides:

> Your [Bailey Meter's] fee is based on Class "D" Services as defined in your form SM42–1066 and made a part of this change Order No. C–2.

■ A fair reading of this contractual language leads to the conclusion that the intent of BAIL and Bailey Meter with regard to the incorporation of SM42–1066 into the contract between them is ambiguous and uncertain. According to Ohio law it is within the province of the jury, and not for the court, to ascertain and determine the intent and meaning of the contracting parties in their use of uncertain and ambiguous language. *Amstutz, Adm'r v. Prudential Ins. Co.,* 136 Ohio St. 404, 408, 26 N.E.2d 454 (1940).

■ Bailey Meter asserts that the language of the limitation of liability is sufficient to exclude liability for any of its negligent acts occurring while its agent Ocheskey was performing his duties as a service representative. We disagree. The language is as follows:

> As our [Bailey Meter's] representatives are authorized to act only in a consulting capacity and are not authorized nor licensed to operate equipment, all responsibility for operation rests with the Purchaser. Bailey Meter Company shall not be liable for any claims, losses, labor, expenses or damages, direct or consequential, resulting directly or indirectly from the service performed, or for other consequential loss or damage of any nature arising from any cause. (A. E–12)

At no place is it stated that Bailey Meter is relieved of liability for the negligent conduct of its own service representative committed in the course and scope of his employment.

■ We are of the opinion that the language is insufficient to relieve Bailey Meter from liability for its own negligence. Under Ohio law provisions that purport to limit negligence liability are strictly construed by the courts. Such provisions are not given effect unless the intent to provide indemnification for a party's own negligence is expressed in clear and unequivocal terms. *Dingledy Lumber Co. v. Erie R.R.,* 102 Ohio St. 236, 131 N.E. 723 (1921). *Accord, Freed v. Great Atl. & Pac. Tea Co.,* 401 F.2d 266 (6th Cir. 1968); *General Acc. Fire & Life Assur. Corp. v. Smith & Oby Co.,* 272 F.2d 581 (6th Cir. 1959); *Kay v. Pennsylvania R.R.,* 156 Ohio St. 503, 103 N.E.2d 751 (1952).

Furthermore, the provision is not clear and unequivocal in another respect. Although Bailey Meter contends that the provision is sufficient to relieve it from liability for loss or damage resulting from "any cause," this general phrase is limited in its scope by the more specific terminology which precedes it. *Dingledy, supra; Kay, supra.* Thus the limitation of liability arguably could extend only to damage resulting from Bailey Meter's operation of the boiler.

This would leave open an issue to be determined by the jury, namely, whether Ocheskey was negligent in performing his duties as a service representative other than by reason of the operation of the boiler. Clearly, sufficient evidence was adduced at trial to support a jury verdict against Bailey Meter even on this issue. Although Ocheskey had previously observed rapid fluctuation in the air and fuel ratios, immediately prior to the explosion he observed a new, abnormal and rapid decrease of steam pressure in the boiler which he knew was consistent with a flame-out (although that thought did not occur to him at the time). He then switched the operation of the boiler from automatic to manual control, with the hope of stabilizing the steam pressure in the boiler; however, the pressure continued its rapid descent despite the change, and this was another indication that a flame-out had occurred in the

boiler. Subsequently Ocheskey left the control board (with no one in attendance to monitor the flame while the boiler was undergoing a rapid drop in pressure and was being operated manually) to ask the advice of BAIL personnel. Ocheskey, at any point during this time period of at least seven minutes, could have shut down the boiler merely by stopping the flow of fuel oil. He needed only to have turned off the fuel control knob on the control panel. The issue, then, involves the duty of a service representative at a time when he is aware, or should be aware, of such a potentially dangerous situation.

■ The duty of a service representative is not fulfilled by idly standing by, allowing a dangerous situation to continue. The issue of whether Ocheskey was negligent in his failure to turn off the fuel control knob, or at least to immediately inform BAIL personnel of the condition in the boiler, is a question of fact to be determined by the jury.

Thus, we find that under Ohio law the limitation of liability provision appearing in SM42–1066, even if it were considered to be part of the contract between the parties, is not sufficiently clear and unequivocal to relieve Bailey Meter from liability for its own negligence within the scope of its duty as a service representative.

BAIL further asserts error in the trial judge's exclusion of the deposition testimony of Ocheskey. BAIL's counsel sought to introduce testimony of Ocheskey, who was not available to testify at the trial, dealing with his knowledge and conduct at the time of the flame-out. The relevant questions and the responses were presented in an offer of proof to the trial judge. The trial judge ruled that the questions sought to elicit an opinion, were argumentative in nature, and amounted to cross-examination of Ocheskey. That portion of the deposition sought to be introduced follows:

Q. You did know about the air fluctuation though? A. Yes, sir.

Q. Which could cause a flame out, could it not? A. It is possible but I do not feel it did at this time.

Q. Did you feel there was a flame out? A. I'm not sure. I don't know that there was a flame out.

I had no way of knowing there was a flame out.

Q. Would the chart, just concerning yourself with the plant master pressure, seem to indicate a flame out condition, particularly, having in mind the period of time that the plant master pressure continued to drop after you switched the plant master over to manual? A. I think—I would think this is a very good possibility. (A. 364)

The Federal Rules of Civil Procedure deal specifically with the proper use of depositions at trial. Fed.R.Civ.P. 32(d)(3)(A) provides:

Objections to the competency of a witness or to the competency, relevancy, or materiality of testimony are *not* waived by failure to make them before or during the taking of the deposition, *unless* the ground of the objection is one which might have been obviated or removed if presented at that time. [Emphasis added.]

The objections at the trial of counsel for Bailey Meter to the questions asked of Ocheskey at the deposition do not rise to the level of an objection to the competency, relevancy or materiality of his testimony. The objections and the reasons they were sustained go merely to the *form* of the questions, *i. e.* that they were argumentative in nature.

■ Fed.R.Civ.P. 32(d)(3)(B) provides that errors in the form of the questions or answers are waived unless seasonable objection is made at the taking of the deposition. Even the assertion of the trial judge that the testimony elicited from Ocheskey was opinion testimony, and hence arguably incompetent, falls within the "unless" clause of Fed.R.Civ.P. 32(d)(3)(A). If the objection to the testimony had been raised at the time the deposition was being taken, the objection could have been obviated or

removed. Thus, Bailey Meter's objections to the questions posed by counsel for BAIL were waived by the failure to assert them when the deposition was being taken.

This Circuit has maintained a policy of strict enforcement of the mandates of Rule 32. *Cordle v. Allied Chem. Corp.*, 309 F.2d 821, 826 (6th Cir. 1962); *Thompson v. Thompson*, 82 U.S.App.D.C. 325, 164 F.2d 705 (1947). Although Rule 32 has been amended since *Cordle*, its basic principle remains the same.

[11] If the objection could have been obviated or removed if made at the time of the taking of the deposition, but was not made, then that objection is waived. The focus of the Rule is on the necessity of making the objection at a point in the proceedings where it will be of some value in curing the alleged error in the deposition. When a party waits until trial to object to testimony in the deposition, the only manner in which to cure the deposition is to bar the objectionable portions from the trial. It is important that objections be made during the process of taking the deposition, so that the deposition retains some use at the time of trial; otherwise counsel would be encouraged to wait until trial before making any objections, with the hope that the testimony, although relevant, would be excluded altogether because of the manner in which it was elicited. The trial judge erred when he sustained Bailey Meter's objection to the offer of proof made by BAIL, and in not giving effect to the purpose and practical significance of Rule 32. However, this error did not result in prejudice to BAIL because the substance of the testimony sought to be presented was elicited in the subsequent deposition testimony of Ocheskey. The information obtained from Ocheskey follows:

Q. And the fact that the plant master continued to drop, even though you

had put it to manual to stabilize the firing rate, would certainly be consistent with the flame out condition in the boiler, would it not?

Mr. Jamra [counsel for Bailey Meter]: Object to that question, same grounds as before.

The Court: Be overruled. He may answer that question. .

A. I would agree with that, yes. (A. 369–70)

It was made clear that the conditions in the boiler were consistent with a flame-out and that Ocheskey was aware that a flame-out could have occurred. That was the substance of the testimony that the trial judge earlier excluded. The error of the trial judge, hence, was harmless, and is insufficient basis on which to order a new trial. Nevertheless, on remand the testimony in the deposition should be admitted as evidence.

## II

## RILEY STOKER

BAIL's case against Riley Stoker was tried to the jury on the issue of negligence. The court instructed the jury to return a general verdict and to answer six interrogatories. A general verdict was returned in favor of BAIL.[1] The jury in its answers to the interrogatories assessed 80% of the negligence to BAIL, but stated that Riley Stoker's negligence was not a proximate cause of the explosion. The trial judge determined that there was an inconsistency between the interrogatories and the general verdict, and entered judgment in favor of Riley Stoker pursuant to Fed.R.Civ.P. 49(b). Counsel for BAIL objected to the entry of the judgment on the ground that Rule 49(b) does not permit such entry of judgment when there is an inconsistency in the interrogatories themselves, as well as with the general verdict.

1. The general verdict reads as follows:

Verdict. We, the Jury, on the issues joined in the case of Bahamas Agricultural Industries, Limited, versus Riley Stoker Corporation, find for the Plaintiff in the sum of

$725,895.00, and further find that the Plaintiffs negligence contributed 80 per cent to the damage and said verdict should be diminished by—

The Court: Blank dollars. (A. 464)

The purpose of Rule 49 is to shed light on the manner in which the jury reaches its verdict. Although there has been debate over the efficacy of the Rule, it cannot be denied that the responses to the interrogatories do reveal to some extent the factual analysis behind the jury's determination.

Fed.R.Civ.P. 49(b) outlines the options open to the trial judge when attempting to decide the effect that inconsistencies between the general verdict and the responses to the interrogatories will have, when determining what judgment to enter. It provides in part:

> When the general verdict and the answers are harmonious, the appropriate judgment upon the verdict and answers shall be entered pursuant to Rule 58. When the answers are consistent with each other but one or more is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial. *When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial.* [Emphasis added.]

In this case the trial judge determined that there were no inconsistencies among the interrogatories; however, he determined that the general verdict for BAIL and the interrogatory response that Riley Stoker's negligence was not a proximate cause of the explosion, were inconsistent, and on that ground he entered judgment for Riley Stoker.

■ We are of the opinion that Interrogatory No. 2 is inconsistent with Interrogatory No. 5, as well as with the general verdict, and that therefore the trial judge erred by entering judgment in favor of Riley Stoker.[2]

Since the jury in its answer to Interrogatory No. 5 determined the degree of plaintiff's negligence to be 80%, it follows as a matter of simple mathematical calculation that the degree of Riley Stoker's negligence was 20%. In our opinion Interrogatory No. 5 was addressed to causal negligence. Only BAIL and Riley were parties to the case at the time the verdict was rendered, as the District Court had previously rendered a verdict in favor of Bailey Meter.

We reject the contention of Riley Stoker that the jury may have attributed the 20% of the negligence to someone not a party to the case as this is pure conjecture.

The general verdict is plain that the jury was determining the issues between BAIL and Riley Stoker, and not with some stranger. The interrogatories also involved the same parties.

The intent of the jury was shown by affidavits executed by five of the six jurors. The jury admitted confusion over proximate cause; their intent was that the amount of the verdict should be reduced by 80%.

2. The relevant interrogatories and the inconsistent responses are as follows:

> The Clerk: Interrogatory No. 1: Was the Defendant Riley Stoker Corporation, through its employees, negligent in any of the claimed respects?
> Answer: Yes.
> Interrogatory No. 2: If your answer to Interrogatory No. 1 is yes, was the negligence, if any, of Riley Stoker Corporation, a proximate cause of the explosion and resulting damage?
> Answer: No.
> Interrogatory No. 3: Was the Plaintiff Bahamas Agricultural Industries, Limited, through its employees, negligent in any respect?
> Answer: Yes.
> Interrogatory No. 4: If your answer to Interrogatory No. 3 was yes, is the negligence of Bahamas Agricultural Industries, Limited, through its employees or agents, a proximate cause of the boiler explosion?
> Answer: Yes.
> Interrogatory No. 5: If your answer to Interrogatory No. 4 is yes, to what degree was the Plaintiff, Bahamas Agricultural Industries, Limited, acting through its employees or agents, negligent?
> Answer: 80 per cent. (A. 464–65)

Riley Stoker contends that the affidavits of jurors are not admissible to impeach their verdict. This is correct, but such affidavits may be used to show the intent of the jurors in support of their verdict. *Freid v. McGrath,* 77 U.S. App.D.C. 385, 135 F.2d 833 (1943).

We agree with the proposition that the Court should reconcile the general verdict and the interrogatories if at all possible, *Studley, Inc. v. Gulf Oil, Inc.,* 407 F.2d 521, 526–27 (2d Cir. 1969), but we are of the view that the answers to these interrogatories are not amenable to such reconciliation.

Rule 49(b) is explicit on the options available to the trial judge when the responses to the interrogatories are inconsistent with each other and one or more is inconsistent with the general verdict. The trial judge is permitted only to return the jury for further consideration of its answers and verdict, or to order a new trial. Rule 49(b) gives the trial judge no authority to enter judgment for *any* party in this situation. The entry of judgment for Riley Stoker was therefore improper. See generally Wright and Miller, 9 *Federal Practice and Procedure* § 2513; 5A *Moore's Federal Practice* ¶ 49.04 at 2225–27; *Nordamann v. National Hotel Co.,* 425 F.2d 1103, 1106 (5th Cir. 1970).

Other errors have been asserted by BAIL, which we have considered, but they do not merit discussion.

The judgment in favor of Riley Stoker and Bailey Meter is reversed and the cause is remanded for a new trial.