In the Matter of The GEORGIAN
VILLA, INC., a Nonprofit
Corporation, Debtor.

In re ATLANTA WEST GENERAL HOS-
PITAL, INC., a Georgia Nonprofit
Corporation, Debtor.

Bankruptcy Nos. B77–2621A, B77–2622A.

United States Bankruptcy Court,
N. D. Georgia,
Atlanta Division.

Feb. 4, 1981.

Morris K. Sirote, Sirote, Permutt, Friend, Friedman, Held & Apolinsky, P.A., Birmingham, Ala., for City National Bank.

P. Eugene Smith, Marshall & Smith, Dayton, Ohio, for First National Bank, Dayton, Ohio.

## ORDER

HUGH ROBINSON, Bankruptcy Judge.

The objection of City National Bank of Birmingham to the proof of claim filed by First National Bank, Dayton, Ohio in the above-styled cases brings the dispute involved herein before the Court. This matter came on regularly to be heard before the Court on October 7, 1980. The hearing reconvened on October 16, 1980 and concluded the following day. Having considered the testimony and oral arguments presented at the hearing and the briefs submitted by the parties, the Court makes the following decision.

## FINDINGS OF FACT

The Georgian Villa, Inc. and Atlanta West General Hospital, Inc. were the owners and operators of a 320 bed acute care hospital in Douglas County, Georgia.[1] On

1. When referred to collectively The Georgian Villa, Inc. and Atlanta West General Hospital, Inc. shall be designated "the Debtors".

2. Hereinafter the bonds will be referred to as the "Atlanta West Bonds".

3. Hereinafter the First National Bank, Dayton, Ohio shall be referred to as "FNB".

4. William B. Ipema, on his own behalf and on behalf of bondholders of Atlanta West Hospital Serial First Mortgage Sinking Fund Series I Bonds v. The Georgian Villa, Inc., a Georgia nonprofit corporation; The First Dayton Corporation, an Ohio corporation; The First National Bank, Dayton, Ohio, a national bank; The Seaboard Planning Corporation, a New

September 29, 1977 each of the Debtors filed a petition under Chapter XI of the Bankruptcy Act.

The Georgian Villa, Inc. issued and has outstanding $17 million in principal amount of registered and bearer bonds designated as Atlanta West Hospital Serial First Mortgage Sinking Fund Series I Bonds.[2] These bonds are subject to a duly-recorded Trust Indenture executed between The Georgian Villa, Inc. and The First National Bank, Dayton, Ohio, Trustee.[3]

William B. Ipema is the representative plaintiff in a class action suit brought by the holders of the Atlanta West bonds against several defendants including FNB.[4] The complaint filed by Ipema alleges violations of § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 and §§ 5, 12(1), 12(2) and 17(a) of the Securities Act of 1933. Numerous breaches of fiduciary duties owed by FNB to the bondholders are also alleged. Compensatory damages of $17 million, punitive damages of an unspecified amount and costs and attorney's fees are sought. After this suit was filed FNB withdrew as indenture trustee and City National Bank of Birmingham was appointed successor indenture trustee.[5]

Atlanta West Hospital was sold to the Hospital Corporation of America on December 20, 1979 for $22 million. The sale proceeds were separated into two funds, the General Fund and the Bondholder Fund.[6] At the present time these funds remain in

York corporation; Glenmore R. Carter and Sarah E. Carter, Carl B. Abelson, Frederick W. Stetz, Clarence V. Ridenour, V. Duane Lacey, and W. Brooks Martin, Civil Action No. C–3–76–388. This case is presently pending before the United States District Court for the Southern District of Ohio, Western Division. Hereinafter this action will be referred to as "the Ipema case".

5. Hereinafter City National Bank of Birmingham will be referred to as "the Successor Indenture Trustee".

6. The Bondholder Fund presently consists of approximately $17 million.

the hands of Morton P. Levine, the receiver for the Debtors.[7]

On July 18, 1979 FNB filed a secured claim in these bankruptcy proceedings for $50,600,000.00. This sum includes approximately $600,000.00 in expenses incurred in defending the Ipema suit and approximately $50,000,000.00 in contingent liability FNB may suffer as a result of this suit. FNB claims a position of priority over all secured and unsecured creditors of the Debtors.

The Successor Indenture Trustee filed an objection to the allowance of the claim of FNB.[8]

It is the position of the Successor Indenture Trustee that the claim of FNB is neither provable nor allowable under the Bankruptcy Act. The Successor Indenture Trustee also contends that FNB's claim is invalid for the reason that FNB cannot be indemnified for the liabilities it may incur as a result of the Ipema suit.

It is contended by FNB that the concepts of provability and allowability are inapplicable in this case for the reason that FNB's claim is secured. FNB also argues that its rights as a secured creditor may not be affected in proceedings for an arrangement under Chapter XI of the Bankruptcy Act.

## APPLICABLE LAW

■ The Successor Indenture Trustee contends that the claim of FNB is not provable under Section 63 of the Bankruptcy Act, 11 U.S.C. § 103 nor allowable under Section 57 of the Bankruptcy Act, 11 U.S.C. § 93. It is first argued by the Successor Indenture Trustee that the claim of FNB is a tort claim and therefore not provable under Section 63 of the Bankruptcy Act, 11 U.S.C. § 103. Generally claims based on tort are not provable in bankruptcy.[9] [3A Collier on Bankruptcy (14th Edition) ¶ 63.-25[1]]. However, in the instant case, FNB's claim for indemnity rests on a provision in

the Trust Indenture and is therefore based on an alleged contractual liability. Accordingly the Court finds that FNB's claim is not a non-provable tort claim.

The Successor Indenture Trustee contends that the claim of FNB is not provable nor allowable for the reason that the claim is contingent, unliquidated and not capable of reasonable estimation.

Under Section 63(a)(8) of the Bankruptcy Act, 11 U.S.C. § 103(a)(8), contingent debts and contingent liabilities are provable in bankruptcy. However this statutory provision is qualified by the proviso in Section 57(d) of the Bankruptcy Act, 11 U.S.C. § 93(d). Thompson v. England, 226 F.2d 488 (9th Cir. 1955); 3A Collier on Bankruptcy (14th Edition) ¶ 63.30. Section 57(d) reads:

"d. Claims which have been duly proved shall be allowed upon receipt by or upon presentation to the court, unless objection to their allowance shall be made by parties in interest or unless the consideration be continued for cause by the court upon its own motion: Provided, however, That an unliquidated or contingent claim shall not be allowed unless liquidated or the amount thereof estimated in the manner and within the time directed by the court; and such claim shall not be allowed if the court shall determine that it is not capable of liquidation or of reasonable estimation or that such liquidation or estimation would unduly delay the administration of the estate or any proceeding under this Act."

The claim of FNB, although provable under Section 63(a)(8) seems to be just the type of claim that is not allowable under the proviso of Section 57(d). It is clearly impossible to predict the outcome of the complex Impema case nor can the Court divine the amount of damages which might possibly be awarded to the class action plaintiffs in the event judgment is entered

---

7. Hereinafter Morton P. Levine will be referred to as "the Receiver".

8. This Court has previously ruled that the Successor Indenture Trustee has standing to object to the claim of FNB.

9. There are exceptions to the rule of non-provability of tort claims which are not here applicable. See 3A Collier on Bankruptcy (14th Edition) ¶ 63.25[2].

against the defendants. In this situation the only practical way to liquidate this claim would be to wait for the conclusion of the Ipema case. However, after four years this suit is still in the discovery stage. That this suit will not be resolved in the near future is beyond question. It can only be concluded that the liquidation of FNB's claim would unduly delay the administration of this bankrupt estate.

■ From the foregoing it is clear that FNB's claim is not capable of reasonable estimation and that liquidation of this claim would delay the administration of the estate for an indefinite period of time. The Court could easily determine that FNB's claim is not allowable in these bankruptcy proceedings but for FNB's assertion that its claim is secured. FNB's assertion is based on Section 10.01(s) of the Trust Indenture which reads:

"(s) The Trustee shall have a lien prior to the rights of the Bondholders upon all moneys and other assets then belonging to the Issuer or held by the Trustee and upon any moneys held by or paid to the Trustee hereunder for its reasonable compensation and expenses, liabilities, advances and counsel fees made or incurred in or about the execution of the trusts hereby created and the exercise and performance of the powers and duties of the Trustee hereunder, and the cost and expense of defending against any liability of any kind, and the Issuer hereby covenants and agrees to pay unto the Trustee such compensation and all advances, counsel fees and other expenses reasonably made or incurred in and about the execution of the Trust hereby created, and to indemnify and hold the Trustee harmless from and against liabilities incurred by the Trustee hereunder."

Under the terms of this agreement the Indenture Trustee has a lien on all of the assets of The Georgian Villa, Inc. as security for the payment of certain liabilities incurred by the Indenture Trustee.

FNB argues that because its claim is secured, the claim cannot be affected by a Chapter XI plan of arrangement. It is true that a plan of arrangement under Chapter XI may modify only the rights of unsecured creditors. Section 356 of the Bankruptcy Act, 11 U.S.C. § 756; *Securities and Exchange Commission v. United States Realty & Improvement Company*, 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940); 9 *Collier on Bankruptcy* (14th Edition) ¶ 8.01[3]. However, no plan of arrangement was ever filed in the instant case. Therefore there has been no violation of the provisions of Section 356 of the Bankruptcy Act, 11 U.S.C. § 756.

In bankruptcy, a secured creditor is in a position different from that of the general unsecured creditors. There are several options open to a secured creditor with regard to the assertion of his claim. He may (1) prove his claim as an unsecured claim and surrender his security; (2) he may prove his claim as a secured claim and give the bankrupt credit for the value of the security; or (3) he may choose not to prove his claim at all and rely solely on his security. 3 *Collier on Bankruptcy* (14th Edition) ¶ 57.07[3]. In the instant case, FNB has chosen to pursue the second option.

The filing of a secured claim by a creditor empowers the bankruptcy court to investigate and determine the validity of the claim for security. *Law Research Service, Inc. v. Crook*, 524 F.2d 301 (2d Cir. 1975); 3 *Collier on Bankruptcy* (14th Edition) ¶ 57.20[4]. Therefore FNB's filing of a secured claim in these bankruptcy proceedings has empowered this Court to determine the validity of FNB's claim for security.

Section 10.01(s) of the Trust Indenture grants the Indenture Trustee a lien on all of the assets of The Georgian Villa, Inc. as security for the payment of certain liabilities incurred by the Indenture Trustee. From the record it appears that this security interest was properly perfected in accordance with Georgia Law.[10]

10. Because all of the assets of the Debtor's are located in Georgia, Georgia law governs the perfection of FNB's security interest therein.

FNB argues that under Section 10.01(s) of the Trust Indenture, it has a right to be indemnified for any liability it may suffer as a result of the Ipema case. The determination of the soundness of this assertion requires the construction of Section 10.01(s). In this section it is stated, "... the Issuer hereby covenants and agrees to pay unto the Trustee such compensation and all advances, counsel fees and other expenses reasonably made or incurred in and about the execution of the Trust hereby created, and to indemnify and hold the Trustee harmless from and against liabilities incurred by the Trustee hereunder".

The wording of Section 10.01(s) indicates that the liabilities for which the Indenture Trustee may be indemnified are those incurred in the execution of the trusts created by the Trust Indenture. This interpretation is supported by the statement in Section 10.01(s) which provides that the Indenture Trustee shall have a lien "for its reasonable compensation and expenses, liabilities, advances and counsel fees made or incurred in or about the execution of the trusts hereby created and the exercise and performance of the powers and the duties of the Trustee, hereunder ...".

The issue for this Court is whether the liabilities for which FNB claims it is entitled to indemnity under the Trust Indenture are covered by Section 10.01(s). In order to make this determination, the Court must examine the complaint filed in the Ipema case. Count I of the complaint alleges that FNB, among others, violated the Federal Securities Laws by conspiring to mislead and defraud the plaintiffs in connection with the purchase of Atlanta West Bonds. It is contended that the prospectus promulgated by the defendants contained material misstatements and omissions of material fact which rendered it misleading. In Count II of Ipema's complaint numerous instances of alleged misfeasance and malfeasance occurring in connection with the performance of the duties of the Indenture Trustee are charged against FNB and Frederick W. Stetz, the executive vice president of FNB.

It is not for this Court to determine the merits of Ipema's contentions. Those questions are before the learned trial judge in the Ohio District Court. However, the outcome of that suit may affect the distribution of the property of the Debtors, which property is subject to the exclusive jurisdiction of this Court. Therefore the Court must consider the ramifications of a possible judgment against FNB and also of FNB's possible exoneration. Although these possibilities must be considered, such consideration in no way intimates any opinion on the part of this Court as to the merits of the Ipema case.

■ With respect to Count I of the class action, indemnification of an unsuccessful defendant in an action based on violation of the federal securities laws is generally disallowed for the reason that it is contrary to the policy of the securities laws. *In Re: Investors Funding Corporation of New York*, CCH Federal Securities Law Reports ¶ 97,667 (S.D.N.Y.1980); *Globus v. Law Research Service, Inc.*, 418 F.2d 1276 (2d Cir. 1969); cert. denied 397 U.S. 913 (1970); *In the Matter of Equity Funding Corporation of America*, 416 F.Supp. 132 (C.D.Cal.1975). Indemnification of an unsuccessful defendant in such a case has also been denied where liability is founded on the defendant's negligence and lack of due diligence. *Odette v. Shearson, Hammill & Co., Inc.*, 394 F.Supp. 946 (S.D.N.Y.1975).

It is clear that the law does not favor indemnification of defendants found liable for violation of the federal securities laws. This policy should be particularly strong in the instant case where indemnity is sought from the victims of the alleged wrongdoing. Accordingly, the Court concludes that FNB has no right to be indemnified for any liability it may incur in Count I of the Impema case based on a finding that FNB violated the federal securities laws.

The Court must now examine FNB's right to indemnity in the context of Count II of the complaint filed by Ipema which concerns the alleged misfeasance and malfeasance of FNB and its executive vice president in the execution of the trusts created by the Trust Indenture.

**974**

■ The Trust Indenture contains a choice of law provision providing that this trust instrument is to be construed in accordance with and governed by the laws of the State of Ohio. Section 24.07 of the Trust Indenture. Under Ohio law indemnity agreements are not construed to indemnify the negligence of the indemnitee unless such indemnity is expressly provided for in the contract in clear and unequivocal terms. *Bahamas Agricultural Industries Limited v. Riley Stoker Corporation*, 526 F.2d 1174 (6th Cir. 1975); *Freed v. Great Atlantic & Pacific Tea Company*, 401 F.2d 266 (6th Cir. 1968). The following quotation from an Ohio case is set forth in the court's opinion in *Freed v. Great Atlantic & Pacific Tea Company, supra*, at 269–270:

> " 'It is a fundamental rule in the construction of contracts of indemnity that such a contract shall not be construed to indemnify against the negligence of the indemnitee, unless it is so expressed in clear and unequivocal terms. *George H. Dingledy Lumber Co. v. Erie R.R.*, 102 Ohio St. 236, 242, 131 N.E. 723, 725 (1921)'."

This Court has carefully reviewed Section 10.01(s) of the Trust Indenture and can find no clear and unequivocal provision for the indemnification of the Indenture Trustee for liabilities incurred by the Indenture Trustee as a result of his own negligence. Therefore the Court can only conclude that the negligent acts of the Indenture Trustee are not covered by the provisions of Section 10.01(s) of the Trust Indenture.

■ Generally a trustee may not be indemnified for losses he suffers by reason of his acts of misfeasance or malfeasance. It is stated in 90 C.J.S. Trusts § 285 at 414:

> "[T]he property of the trust estate can be used to reimburse trustees for expenses or losses incurred only where he has used good faith and common prudence; and where he has been guilty of a misfeasance, he will not be reimbursed for money which he has paid out, or indemnified against demands and losses caused by his own wrongful acts, notwithstanding the trust agreement provides for his indemnity against demands and losses arising out of the trust." (footnotes omitted).

Thus a trustee may not be indemnified for any liability he may suffer as a result of his acts of misfeasance or malfeasance. Accordingly this Court concludes that FNB will not be entitled to indemnity under Section 10.01(s) of the Trust Indenture in the event judgment is entered against FNB in the Ipema case on a finding of facts of misfeasance or malfeasance committed by FNB in its performance of its fiduciary duties.

The consequences of FNB's possible exoneration must be considered. Section 10.01(s) states that the Indenture Trustee is to be indemnified for defending against any liability of any kind. From the plain wording of this provision this Court must conclude that FNB, if exonerated in the Ipema case, will be entitled to be indemnified for costs incurred in making its defense. Furthermore FNB will have a priority lien on the Bondholder Fund as security for the payment of these expenses.

At the present time the Receiver is holding approximately $17 million for the benefit of the bondholders. The only impediment to the immediate distribution of this fund is the claim of FNB. However, FNB's potential interest in this fund must be protected. This requires the preservation of a portion of the Bondholder Fund to cover the costs which may be awarded to FNB if FNB prevails in the Ipema case.

■ The allowance of costs to the prevailing party in litigation is a matter within the discretion of the trial court. Rule 54(d) of the F.R.Civ.P.; *In re: Nissan Antitrust Litigation*, 577 F.2d 910 (5th Cir. 1978) cert. denied sub nom. *P.D.Q., Inc. of Miami v. Nissan Motor Corp. in U.S.A.*, 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979); *Harrington v. Texaco, Inc.*, 339 F.2d 814 (5th Cir. 1964) cert. denied 381 U.S. 915, 85 S.Ct. 1538, 14 L.Ed.2d 435 (1965). This Court cannot possibly estimate the costs which the Ohio District Court may, in its discretion, award to FNB if FNB prevails in the Ipema case. Any attempt to make such an estimate would be an encroachment by this

Court on the discretionary powers of the Ohio District Court. Therefore this Court cannot determine the amount of the Bondholder Fund which must be preserved for FNB's protection.

Atlanta West Hospital was sold over a year ago. Further delay in the effectuation of a distribution of the sale proceeds to those entitled to receive them is undesirable and totally repugnant to the goal of the expeditious administration of the bankrupt estate. After much deliberation this Court concludes that the time has come for the Bondholder Fund to be turned over to the representative of the bondholders, i. e., the Successor Indenture Trustee, subject to the potential claim of FNB for costs awarded to FNB in the Ipema case. To determine the portion of the fund which must be retained for the protection of the potential interest of FNB, the Successor Indenture Trustee must seek direction from the Ohio District Court.

## CONCLUSIONS OF LAW

1. FNB's claim for indemnity rests on an alleged contractual liability and therefore is not a non-provable tort claim.

2. Section 10.01(s) of the Trust Indenture for the Atlanta West Bonds creates a valid security interest in all of the assets of The Georgian Villa, Inc. for the payment of certain liabilities incurred by the Indenture Trustee.

3. The security interest created by the Trust Indenture was properly perfected in accordance with Georgia law.

4. Under Section 10.01(s) of the Trust Indenture the Indenture Trustee may be indemnified for liabilities incurred in the execution of the trusts created by the Trust Indenture.

5. An unsuccessful defendant in an action brought for violation of the federal securities laws may not be indemnified for the liabilities incurred by the defendant as a result thereof. Therefore FNB may not be indemnified for any liabilities it may suffer in the Ipema case based on a finding that FNB violated the federal securities laws.

6. Under Ohio law, contracts of indemnity are not construed to indemnify against the negligence of the indemnitee unless it is so provided in clear and unequivocal terms. Because Section 10.01(s) does not clearly and unequivocally provide that FNB may be indemnified for its negligent acts, FNB may not be indemnified for any liability it may suffer in the Ipema suit based on a finding that FNB negligently breached its fiduciary duties to the bondholders.

7. A trustee may not be indemnified for any liability he may suffer as a result of his acts of misfeasance or malfeasance committed in connection with the performance of his fiduciary duties. Therefore FNB may not be indemnified for any liability it may suffer in the Ipema case based on a finding that it negligently or wilfully breached its fiduciary duties to the bondholders.

8. Under Section 10.01(s) of the Trust Indenture, the Indenture Trustee may be indemnified for defending against any liability of any kind. If exonerated in the Ipema case, FNB may be indemnified for the costs incurred in making its defense. By the terms of Section 10.01(s) of the Trust Indenture, FNB will have a first priority lien on the Bondholder Fund for the payment of these costs. It is therefore

ORDERED that the Receiver shall forthwith turn over and deliver to the Successor Indenture Trustee the entire amount of the Bondholder Fund; and it is further

ORDERED that the Trustee shall and is hereby directed to apply to the Honorable Judge Edward H. Johnstone presiding in the United States District Court for the Southern District of Ohio, Western Division prior to making any distribution for directions as to the amount of the Bondholder Fund which must be retained by the Successor Indenture Trustee for the protection of the potential interest of FNB therein; and it is further

ORDERED that upon receiving said direction from the Honorable Judge Johnstone and Successor Indenture Trustee shall immediately thereafter distribute to the

bondholders that portion of the Bondholder Fund which is not retained by the Successor Indenture Trustee for the protection of FNB.

SO ORDERED.

