**Francis Joseph MONAGHAN, Jr. and Andrea Marion Monaghan, his wife**

v.

**UITERWYK LINES, LTD. and Uiterwyk Corporation.**

Civ. A. No. 82–0168.

United States District Court,
E.D. Pennsylvania.

April 10, 1985.

Fine & Staud, Philadelphia, Pa., for plaintiffs.

## MEMORANDUM and ORDER

SHAPIRO, District Judge.

This is an action by a longshoreman and his wife against the ship on which he was injured on March 27, 1981; there is jurisdiction by reason of diversity of citizenship and under the Longshoremen's and Harbor Workers' Compensation Act (the "Act"), 33 U.S.C. §§ 901 *et seq.* After the institution of the lawsuit, defendants filed a Petition in Bankruptcy; the Bankruptcy Court subsequently permitted plaintiffs to proceed with this action so long as the debtor incurred no expense and recovery was sought only under any available insurance coverage. The lawyer who had previously entered an appearance for defendants lacked authority to act and was permitted to withdraw. No other appearance having been entered for defendants, when the case was called for trial a default judgment was entered for plaintiffs. The court then heard plaintiffs' testimony on damages in accordance with Fed.R.Civ.P. 55(b)(2).

The default judgment held defendants legally responsible for plaintiff Francis Monaghan's injuries. Therefore, he was entitled to an award of damages to compensate him for: past lost wages, reduced by the effective tax rate; his probable pecuniary loss over the duration of his career, reduced to its present value; past medical expenses; future estimated medical expenses, if any; past and future pain and suffering; and loss of life's pleasures. Prejudgment interest (at 10%) has also been requested. Plaintiff's wife, Andrewa Marion Monaghan, is entitled to a sum for loss of consortium, that is the loss of her husband's society, caused by defendants' negligence. *American Export Lines v. Alvez,* 446 U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284 (1980).

Past lost earnings are measured from the date of the accident to the date of trial. The accident occurred on March 27, 1981 and plaintiff was out of work until June 24, 1983, when he returned to work as a water boy approximately one day a week. Plaintiff earned $25,760 in 1980. On this basis, allowing for increases in wages of longshoremen, the total gross past lost earnings (without deduction for taxes) would be $130,221. From this sum must be deducted the income plaintiff has actually received and reasonably should have received since the date of the accident. Plaintiff's evidence was that he had earned $20,966 (also without deduction of taxes) since the date of the accident so that the total gross lost earnings would be $130,221 minus $20,966, or the sum of $109,255.

But the court finds the plaintiff could have earned more than $20,966 since returning to work after the accident. His testimony that he can only work one day a week is not persuasive, especially since he has chosen work requiring him to lift pails of water. It seems likely that plaintiff has been more concerned to work only at the waterfront than to maximize his earned income and mitigate his damages. That, of course, is his choice and it may make good sense to him but defendants are not required to pay for plaintiff's reluctance to

work elsewhere. Therefore, the court deducts double the earned income of $20,966, or $41,932, because plaintiff could have worked at least the equivalent of two days a week. So calculated, the total lost past gross wages is $88,289.

A portion of past lost earnings must also be deducted for the amount plaintiff would have paid in federal, state and local income taxes. Based on testimony of plaintiffs' expert that plaintiff Francis Monaghan would pay 16% of his income in federal taxes and 6½% in state and local taxes, total past lost net wages as a longshoreman is $88,289 minus $19,886 or $68,403.

■ Plaintiff is also entitled to the loss of fringe benefits which included a pension plan as well as health and welfare benefits. The rate of his former employer's contribution is approximately 36% of the wages for longshoremen; his past lost fringe benefits would amount to 36% of $88,289, or $31,784.

■ To determine future lost earnings, we first consider the amount that the employee would have been able to earn were it not for the injury. Mr. Monaghan's current earnings would have been $38,520 per year as of the end of 1985. The court recognizes that some increases in such wages would be likely in the next 25 years and agrees with plaintiffs' expert in taking such increases into account. But the court rejects plaintiff's testimony that he might have become a gang boss or supervisor as speculative. While he loved being a longshoreman and it was a family tradition, in view of the number of persons his own age similarly situated and working on the docks, including his cousins, there is no reason to believe on this record that he had so much more initiative, competitive drive and incentive to work that he rather than others would have earned such advancement.

■ Also, the court disagrees with the expert that plaintiff's present earnings of $6,656 per year are a true measure of his loss of earning capacity. Plaintiff is evidently a personable, articulate man of at least average intelligence who now has a high school education, drives both a car and a lift truck, and could certainly find gainful employment for more than one day a week if he were motivated to do so. Many persons with more pain than that of Mr. Monaghan perform many jobs (although not necessarily on the waterfront). Therefore, the court reduces the plaintiff's estimated loss of future earning capacity ($38,520 minus $6,656 = $31,864) by one-third and calculates same at $21,243 per year; this essentially posits that plaintiff will be able to hold a half-time position (15–20 hours per week) in the future.

■ Future lost earning capacity is measured for the duration of the work-life expectancy period based on plaintiff's current loss of earning capacity. Mr. Monaghan is 39 years of age; his life expectancy, based on 1980 United States Life Tables (prepared by the United States Department of Health and Human Services) is 34 years. His work life expectancy at time of trial is 25.7 years if he would have retired at 65.

■ Future lost earning capacity must be calculated and reduced to its present value in accordance with *Jones and Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983). The damage award represents the present value of a lost stream of earnings in an inflation-free economy. The two elements in the calculation are: 1) the amount that the employee would have earned during each year he would be expected to work after the injury; and 2) the appropriate discount rate, reflecting the safest available investment. The entire lost stream of earnings must be discounted back to the date of injury rather than date of trial if the plaintiff is to be awarded interest on the discounted sum for the period between injury and judgment. *See Jones*, 462 U.S. at 538, n. 22, 103 S.Ct. at 2551 n. 22, 76 L.Ed.2d at 784 n. 22.

■ In discounting to present value it is necessary to choose an appropriate below-market discount rate. No economic evidence was presented. The court pre-

sumes that Mr. Monaghan would invest in low risk, short-term securities and reinvest frequently; the relevant interest rate is the difference between the short-term market interest rate and the average rate of price inflation in the same year. The court takes judicial notice of historical interest and inflation rates and determines the appropriate discount rate is 2%.* On this basis the present value of future lost earning capacity is $454,572. After deducting for taxes, the present value of net future lost earning capacity is $352,293. The present value of lost future fringe benefits calculated also utilizing the net interest rate of 2% is $163,646.

 Mr. Monaghan has incurred total medical expenses to date of $21,198.42. There is no basis on the record for questioning the reasonableness or necessity of the past medical expenses and they will be awarded. But plaintiffs project future medical expenses caused by the accident in suit of $2,000 per year for hospitalization and $4,000 per year for physician fees and medications, a total annual medical expense of $6,000 per year. This is incredible.

 Plaintiff Francis Monaghan suffers from a herniated disc (L4–5) and radiculopathy but has refused surgical treatment of his lumbar sacral spine. Although his symptoms are permanent, his orthopedic surgeon has discharged him unless his symptoms are aggravated. He may need occasional hospitalization for traction or ameliorative treatment but essentially plaintiff will be on medication for pain. The cost of such medication is recoverable as is an occasional doctor's visit to have his medication prescriptions renewed (although this is frequently done by mail or phone). But there is no right to recover for hospital and surgeon's fees for surgery he refuses to have. He is entitled to recover for attending another "pain clinic" to teach him to live with the pain he is not going to correct surgically and for sex therapy to teach him to cope with his disability better. The court is of the view that $600 rather than $6,000 per year will adequately accomodate these needs. Based on 34.4 years of life expectancy and a net interest rate of 2%, the present value of future medical expenses is $14,820.

Plaintiff is also entitled to an award to compensate for pain and suffering and loss of life's pleasures. There is no formula for calculating this amount. Plaintiff testified that he was fine prior to the injury but since the accident he suffers constant pain in his lower back and down his left leg. Hospitalization and medication ameliorates but does not relieve his condition. This has effected his ability to work and his recreational and social life; this affects his self-image and personality. The tension resulting from his limited physical capacities and irritability adversely affect his ability to relate to his wife and child.

The fact that some families grow stronger and closer in adversity does not preclude recovery for the damage to this injured worker's family life. A father's primary role in raising a son might reasonably be viewed by many as providing love, emotional security and moral guidance rather than mere physical companionship, but the court credits this plaintiff's testimony that his inability to share sports activities with his young son diminishes life's pleasures for the father.

Plaintiff's relationship with his wife has also been harmed, if not by his physical

* The real interest rate is effected not only by the lag in inflationary expectations behind the actual inflation rate and by changes in real supply and demand (business, consumer, Government and foreign) for United States credit, but also by the tax rate and tax structure. We assume that the recent yield on federal funds is approximately 8.5%, so the after-tax yield for someone in Francis Monaghan's tax situation (22.5% tax rate) is 6.6%. If inflation is 4.9% (Philadelphia Consumer Price Index for January, 1984—January, 1985), Monaghan's real after-tax rate is 6.6% minus 4.8% or 1.8%. If tax rates were to be reduced by tax reform, after-tax interest rates could be effected; e.g., if the Reagan proposal to tax only real interest were enacted, Monaghan might pay tax of only 8.5% minus 4.8% or 3.7%, leaving an after-tax real interest rate of 2.9%. Considering all the uncertainties involved in the prediction of future economic behavior over the number of years involved, the court considers 2% a reasonable choice.

condition itself, by their reactions to it. Other aspects of the marital relationship have also suffered. His spouse obtained work outside the home to avoid constant exposure to his condition and while that has probably benefited them both financially, it might not be what she would have done had he not been injured.

The court will also allow something in damages for plaintiff's claim of impaired capacity for sexual enjoyment. But where remedial surgical intervention is possible but refused, an impartial factfinder can only conclude that the diminution in pleasure is not as great as described or not of sufficient importance to motivate correction of the condition. Plaintiff did testify he would undergo the operation if he were bed-ridden by his back condition, so that his refusing operative relief can be considered in regard to the credibility of his claims of pain, suffering and loss of life's pleasures. But plaintiff's damages are not reduced by his failure to undergo an operation on his spine. It is a serious, although rarely life threatening, surgical procedure that is, like other surgical procedures, not always successful.

Plaintiff has been hospitalized, undergone a myelogram, and been treated with steriod shots, traction and a body cast (chest to groin) for ten weeks. He also attended a pain clinic. He still has limitation of motion and wears a back brace. He suffers pain which increases with motion or tension; he uses a Tens Unit (shock treatment) nightly and Percodan (muscle relaxant) for pain but nonetheless has trouble sleeping and cannot return to his former work or help around the house as he did formerly. While some of plaintiff's claims are exaggerated and incredible, the court awards the sum of $100,000 for past and future pain and suffering and loss of life's pleasures. The court also awards $20,000 to Mrs. Monaghan for her loss of consortium caused by Mr. Monaghan's injuries.

Plaintiffs request prejudgment interest or delay damages in the amount of 10%. This action is based on the admiralty laws of the United States. Plaintiffs are entitled to prejudgment interest under admiralty law; the rule in admiralty is that "prejudgment interest should be awarded unless there are exceptional circumstances that would make such an award inequitable." *Matter of Banker's Trust Co.,* 658 F.2d 103, 108 (3d Cir.1981), *cert. denied,* 456 U.S. 961, 102 S.Ct. 2038, 72 L.Ed.2d 485 (1982). This rule has been applied in maritime personal injury cases. *McCormack v. Noble Drilling Corp.,* 608 F.2d 169 (5th Cir.1979); *Weiland v. Pyramid Ventures Group,* 511 F.Supp. 1034, 1044 n. 3 (M.D.La.1981). *See also, Dugas v. National Aircraft Corp.,* 438 F.2d 1386, 1392 n. 11 (3d Cir.1971) (prejudgment interest awarded in action under Death on High Seas Act); *First National Bank of Chicago v. Material Service Corp.,* 597 F.2d 1110 (7th Cir.1979). The delay in bringing this case, filed in 1982, to trial was occasioned not by the plaintiffs but by the defendants' bankruptcy which required the matter to remain in the suspense docket until plaintiff obtained leave of the Bankruptcy Court to proceed. There are no exceptional circumstances making an award of prejudgment interest inequitable.

The rate of prejudgment interest in admiralty cases is within the discretion of the court. No proof in support of this rate was offered but the court takes judicial notice that the Post-Judgment Interest Rate under the Federal Court Improvements Act of 1982 has averaged slightly over 10%. Also because this court has jurisdiction by reason of diversity of citizenship, it is reasonable to apply the rate of Pa.R.Civ.P. 238; under Rule 238, the court adds to the amount of compensatory damages, as part of the award, damages for delay at 10% per annum not compounded. (Pennsylvania delay damages are computed from the date the plaintiff filed the initial complaint in the action or a date one year after the accrual of the cause of action, whichever is later.) Therefore, delay damages are awarded at 10% from the date of injury, March 27, 1981, on all past due amounts.

The total sum awarded in which amount judgment will be entered is as follows:

Francis J. Monaghan, Jr.:

| | |
|---|---:|
| Past Lost Wages | $ 68,403 |
| Past Fringe Benefits | 31,784 |
| Past Medical Expenses | 21,198 |
| Pain and Suffering and Loss of Life's Pleasures | 100,000 |
| Future Lost Wages | 352,293 |
| Future Fringe Benefits | 163,646 |
| Future Medical Expenses | 14,820 |
| Prejudgment Interest at 10% | 88,554 |

Andrea M. Monaghan:

| | |
|---|---:|
| Loss of Consortium | $ 20,000 |
| Prejudgment Interest at 10% | 8,000 |

## FINAL JUDGMENT

AND NOW, this 10th day of April, 1985, following the entry of default on March 4, 1985 and a bench hearing on the amount of damages, trial by jury having been waived by plaintiffs, and for the reasons set forth in the foregoing Memorandum, it is ORDERED that:

JUDGMENT is entered in favor of plaintiff Francis Joseph Monaghan, Jr. and against defendants Uiterwyk Lines, Ltd. and Uiterwyk Corporation in the amount of $840,698.

JUDGMENT is entered in favor of plaintiff Andrea Marion Monaghan and against defendants Uiterwyk Lines, Ltd. and Uiterwyk Corporation in the amount of $28,000.