Lamar STUTZMAN and Rhonda Stutzman, Plaintiffs–Appellees,

v.

CRST, INCORPORATED, an Iowa corporation, and Ferman Brown, Defendants–Appellants.

No. 92–3041.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 17, 1993.

Decided June 21, 1993.

John D. Ulmer, Patrick F. O'Leary (argued), Yoder, Ainlay, Ulmer & Buckingham, Loraine P. Troyer, Goshen, IN, for plaintiffs-appellees.

Michael McDonough (argued), Cedar Rapids, IA, Daniel W. Glavin, Beckman, Kelly & Smith, Hammond, IN, for defendants-appellants.

Before EASTERBROOK and KANNE, Circuit Judges, and WILL, Senior District Judge.*

KANNE, Circuit Judge.

This diversity action stems from an automobile accident in Indiana between Lamar Stutzman, an Indiana resident, and Ferman

---

* The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation.

Brown, a driver for CRST, Inc. The Stutzmans filed a complaint in Indiana state court against CRST and Mr. Brown for damages stemming from Mr. Stutzman's injuries. CRST, an Iowa corporation, responded by removing the case to federal court and denying any negligence on its part or the part of Mr. Brown, a Missouri resident. Shortly before trial, CRST admitted liability. The subsequent trial on damages resulted in a jury verdict for the Stutzmans: $783,000 for Mr. Stutzman and $100,000 for Mrs. Stutzman. On appeal, the defendants claim that the trial was so error-ridden that a new trial is required. We disagree and affirm the plaintiffs' judgment.

Of the many issues raised by the defendants, only three merit significant discussion: (1) whether the jury instruction on damages improperly shifted the burden of proof to the defendants, (2) whether the jury instruction on the aggravation of a pre-existing condition was supported by the evidence, and (3) whether the jury verdict was excessive.

## I. Jury Instructions

### A. Burden of Proof Regarding Damages

In its charge to the jury, the district court gave the following instruction:

No particular degree of mathematical certainty is required in awarding damages so long as the amount awarded is supported by probative evidence, but it may not be based upon mere conjecture, speculation, or guesswork.

Where there is doubt as to the exact proof of damages, such uncertainty may be resolved against the negligent party.

The defendants correctly note that the burden of proof on the issue of damages rests with the plaintiff. *See Lincoln National Life Insurance Co. v. NCR Corp.*, 772 F.2d 315 (7th Cir.1985) (following Indiana law). Understandably, the defendants urge us to focus solely on the second paragraph of the instruction and conclude that it improperly removes the burden of proof from the plaintiffs and places it on the defendants. However, we are required to look at more than just one sentence.

In a diversity case, federal law guides our review of jury instructions. *Smith v. Chesapeake & Ohio Ry. Co.*, 778 F.2d 384 (7th Cir.1985). The following passage aptly sums up the task before us:

[O]ur review of jury instructions is limited to the determination of "whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine those issues.... With instructions, we don't pick nits; we examine the whole of what was given and look for overall fairness and accuracy."

*Trustees of Indiana University v. Aetna Casualty & Surety Co.*, 920 F.2d 429, 437 (7th Cir.1990) (quoting *Midcoast Aviation, Inc. v. General Elec. Credit Corp.*, 907 F.2d 732, 741–42 n. 7 (7th Cir.1990)).

Viewing the instructions as a whole, we cannot say that the jury was misled. The first paragraph of the instruction told the jury that their award had to be based on probative evidence, rather than on speculation. A preceding instruction told the jury:

You must determine the amount of money that will fairly compensate Mr. Stutzman for those elements of damage that were proved by the evidence to have resulted from the negligence of the defendants.... You are to determine whether these elements of damage have been proved by a preponderance of the evidence relating to damages.

In addition, one of the first instructions told the jury that the plaintiffs had the burden of proving their case—a case only on the issue of damages since CRST had admitted liability. Finally, the court made the following statement during its preliminary instructions:

The plaintiffs will have to prove their damages by a preponderance of the evidence, and will have to prove by a preponderance of the evidence that the defendants' negligence was the "proximate cause" of their injuries.

Read as a whole, we are satisfied that the jury understood that the burden of proof was on the plaintiffs. The second paragraph of the challenged instruction merely told the jury that if an item of damage, already prov-

en, was difficult to quantify, they were permitted to resolve that doubt against the defendants as the admittedly negligent party. This is not an incorrect statement of law, thus the defendants were not prejudiced by it. *See Ft. Wayne v. Capehart–Farnsworth Corp.,* 127 Ind.App. 412, 142 N.E.2d 442, 448 (1957).

## B. Sufficiency of Medical Evidence Regarding the "Aggravation of a Pre-existing Condition"

The defendants challenge a second instruction. The district court told the jury that when they determined the proper amount to award Mr. Stutzman they could consider, *inter alia,* "the aggravation of a previous injury." The defendants argue that this charge constitutes reversible error because the plaintiffs failed to show that Mr. Stutzman's pre-existing condition, a congenital back problem called spondylolisthesis, was aggravated by his car accident injury. Further, the defendants claim that the error was not harmless because it resulted in a higher damages award.

"It is prejudicial error for a trial court to give instructions which find no support in the evidence, unless the record shows the error is clearly harmless." *Kirschner v. Broadhead,* 671 F.2d 1034, 1040 (7th Cir.1982). Consequently, the issue before us is whether the plaintiffs offered sufficient competent evidence that Mr. Stutzman's previous medical condition was aggravated by the accident. It is argued that no competent evidence supported the instruction because the only evidence on aggravation was improperly admitted.

At trial, the plaintiffs called two expert medical witnesses. Dr. Schaffer testified, via deposition, that trauma could aggravate spondylolisthesis and that he thought Mr. Stutzman's spondylolisthesis was aggravated by the car accident. However, during cross-examination in response to a series of questions concerning the aggravation of Mr. Stutzman's spondylolisthesis, Dr. Schaffer qualified his earlier testimony:

A　[ ] Just that it might have exacerbated the problem and it may not have.　[ ]

And I cannot correlate for sure that it did or didn't.

Q　So you can't say with any medical certainty at all that that's the cause of any low back pain?

A　That's correct.

In addition to Dr. Schaffer, Dr. Klaassen testified at trial via a videotaped deposition. He stated that spondylolisthesis could be aggravated by a car accident like the one Mr. Stutzman had. This exchange followed:

Q　Assuming Mr. Stutzman never had any problems with his low back as far as we can tell before the accident of April 5th, 1990, and has had problems since that date, do you have an opinion based upon a reasonable degree of medical certainty whether the accident aggravated or worsened that condition making it symptomatic?

A　Well, here's where it gets to be very difficult to split the two apart. I mean how do you determine what symptoms in his lower legs are caused by his cervical spine compression [the accident injury] and his lumbar problem [the pre-existing condition].

The defendants argue that the foregoing testimony was improperly admitted because, under Indiana law, expert physician testimony must be based on a reasonable medical probability and these doctors testified to only possibilities. The defendants, however, are relying on the wrong body of law. Indiana law does not govern the admissibility of expert testimony in a federal forum; rather, the Federal Rules of Evidence govern. Consequently, the proper question is whether the physicians' testimonies were properly admitted under Federal Rules of Evidence. Before we reach that question, however, a brief explanation of why federal law applies is necessary.

■　Federal courts exercising diversity jurisdiction apply state law to substantive issues and federal law to procedural issues. *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The question before us is whether the admission of expert testimony

should be governed by state or federal law; in other words, is it a procedural issue or a substantive issue? In the past we have not specifically answered this question. *See Kirschner*, 671 F.2d at 1040. We do so today.

■ We have held that the Federal Rules of Evidence generally apply in federal diversity actions. *See Pincus v. Pabst Brewing Co.*, 893 F.2d 1544, 1553 (7th Cir.1990); *Rosenburg v. Lincoln American Life Ins. Co.*, 883 F.2d 1328, 1333 (7th Cir.1989); *Lovejoy Electronics, Inc. v. O'Berto*, 873 F.2d 1001, 1005 (7th Cir.1989). *See also Pieters v. B–Right Trucking, Inc.*, 669 F.Supp. 1463 (N.D.Ind.1987). On some occasions, however, we have addressed the applicability of specific Federal Rules and reached various results. *Compare Flaminio v. Honda Motor Co., Ltd.*, 733 F.2d 463, 471–72 (7th Cir.1984) (Federal Rule 407, not state rule, applies in diversity action), *with Monetti, S.P.A. v. Anchor Hocking Corp.*, 931 F.2d 1178, 1182 (7th Cir.1991) (whether oral evidence is admissible to show that an ambiguous document satisfies the statute of frauds is governed by state law); *Lovejoy*, 873 F.2d at 1005 (state's dead man statute governs admissibility of certain evidence where state law supplies rule of decision).

In addition to establishing the general rule that the Federal Rules apply to determine the admissibility of evidence, these cases show that there are exceptions to the general rule: express exceptions contained in the Federal Rules and "substantive rules masquerading as evidence rules." *Id.* In *Lovejoy*, we found an exception based on language contained in the Federal Rules themselves. *Id.* Rule 601, governing the competency of witnesses, "sweeps away the traditional objections to competency of witnesses, but with the following exception:" preservation of the state dead man's statutes when state law supplies the rule of decision. *Id.*[1] In *Monetti*, we concluded that state law should apply because the issue was essentially one of parole evidence—a substantive contract law issue. 931 F.2d at 1182.

To decide whether the general rule applies to the admissibility of expert testimony we first look to whether there is an express exception in the Federal Rules themselves. There is not. Second, we explore whether the Federal Rules governing expert testimony are really substantive, rather than procedural. "The test must be whether a rule really regulates procedure,—the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14, 61 S.Ct. 422, 426, 85 L.Ed. 479 (1941).

The rules at issue regulate process rather than establish substantive rights. The rules delineate what evidence may be used to prove the essential elements of a claim; they do not alter what has been determined by state law to constitute those elements. In examining Rule 407 and its mandate that evidence of subsequent remedial measures be excluded, we noted:

> Congress's judgment that juries are apt to give too much weight to such evidence is a procedural judgment . . . that is, a judgment concerning procedures designed to enhance accuracy or reduce expense in the adjudicative process.

*Flaminio*, 733 F.2d at 471. Similarly, the Federal Rules governing expert testimony reflect a procedural judgment that juries are aided by hearing expert testimony and that assistance enhances the accuracy of the entire process—even in situations where an expert is not absolutely certain about his conclusion. This judgment does not dictate the parties' substantive rights, but merely controls the method of enforcing those rights established by the state.

We hold that the Federal Rules of Evidence govern the admissibility of expert testimony in federal diversity cases. Further, we note that our conclusion is consistent with those of other circuits that have addressed this issue. *See Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052 (4th Cir.1986); *Dawsey v. Olin Corp.*, 782 F.2d 1254 (5th Cir.1986).

---

1. Other express exceptions are contained in Rule 302, which governs presumptions, and Rule 501, which governs privileges.

■ Having concluded that federal law applies, we also believe that the testimony of both doctors in this case was properly admitted. "The decision to admit expert testimony is committed to the broad discretion of the trial court and its determination will be affirmed unless it is 'manifestly erroneous.'" *Bob Willow Motors, Inc. v. General Motors Corp.*, 872 F.2d 788, 797 (7th Cir.1989). *See also Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir.1990).

In *United States v. Cyphers*, 553 F.2d 1064, 1072–73 (7th Cir.), *cert. denied*, 434 U.S. 843, 98 S.Ct. 142, 54 L.Ed.2d 107 (1977), we specifically held that Rule 702 does not require "that an expert's opinion testimony be expressed in terms of a reasonable scientific certainty in order to be admissible.... We adhere to the rule that an expert's lack of absolute certainty goes to the weight of his testimony, not to its admissibility." Similarly, in *Kirschner* we concluded that "[t]he admissibility of an expert medical opinion, of course, should not turn on whether the testifying physician characterizes a particular potential cause of injury as 'conceivable,' 'possible,' or 'probable.'" 671 F.2d at 1039.

In *Kirschner*, however, we also suggested that something more than a "mere possibility" was required. *Id.* at 1040. Since *Kirschner*, several cases have aptly explained the correct criteria that district courts should examine in deciding whether to admit expert testimony.

> The district court ruled that plaintiff had established an adequate foundation, and that any questions regarding [the expert's] methodology or particular area of expertise were more appropriately addressed during cross-examination. This was hardly error. Experience and knowledge establish the foundation for an expert's testimony; the accuracy of such testimony is a matter of weight and not admissibility.

*Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1308 (7th Cir.1987), *cert. denied*, 492 U.S. 917, 109 S.Ct. 3241, 106 L.Ed.2d 588 (1989). *See also Sheldon v. Munford, Inc.*, 950 F.2d 403, 410 (7th Cir.1991); *Bob Willow*, 872 F.2d at 797; *Bright v. Land O'Lakes, Inc.*, 844 F.2d 436, 441 (7th Cir.1988).

The foregoing supports our conclusion that the Federal Rules do not contain any threshold level of certainty requirement. As long as a medical expert's qualifications are proper and the expert relies on appropriate types of information under Rule 703, the district court does not abuse its discretion by admitting the medical expert's testimony.

In the instant case, the defendants do not argue that inadequate foundations were laid for the doctors' testimonies. They do not challenge Dr. Schaffer's and Dr. Klaassen's qualifications. They do not claim that the doctors based their opinions on improper bases. In fact, the testimonies are clearly based on medical opinions—trauma can aggravate spondylolisthesis—and examinations of Mr. Stutzman. The defendants' sole quarrel with the doctors' opinions is the doctors' levels of certainty. Under the Federal Rules, certainty is an issue for the jury and does not affect admissibility. *Cyphers*, 553 F.2d at 1072–73.

The district court properly admitted both doctors' testimonies and such evidence amply supported the instruction permitting the jury to consider the aggravation of a pre-existing condition in determining its award of damages.

## II. Jury Verdict

The defendants contend that a new trial is required because the jury awarded the Stutzmans an excessive amount which is not substantially supported by the evidence. The trial court denied the defendants' motion for a new trial on precisely this issue, concluding that the evidence supported the award.

■ We use a federal standard in diversity cases to determine whether a new trial is necessary due to an excessive damages award. *Dresser Industries, Inc. v. Gradall Co.*, 965 F.2d 1442, 1446 (7th Cir.1992). "[W]e will alter jury awards only if they are 'monstrously excessive, born of passion and prejudice, or not rationally related to the evidence.'" *Id.* (citing *Pincus v. Pabst Brewing Co.*, 893 F.2d 1544, 1554 (7th Cir. 1990)). Our review is deferential because a damage award is primarily an issue of fact. Furthermore, the challenging party's task is

made more difficult when the district judge agrees that the award is proper—as evidenced by a new trial motion that is denied. *Dresser,* 965 F.2d at 1446.

██ The defendants claim that if the jury had based its award on the evidence, the award would not have exceeded $585,589. Hence, they reason that the verdict must be a result of the jury's passion and prejudice. We disagree. The plaintiffs' unrebutted evidence at trial proved, *inter alia,* the following regarding general damages: Mr. Stutzman suffered a ruptured cervical disk at C3–C4 which resulted in spinal cord injury; he sustained a forty percent permanent partial impairment of his body as a whole; his spinal cord injury causes him to walk with an ataxic or drunken gait due to lack of balance, coordination and strength; he is prone to falling suddenly; he lacks feeling in his feet; he is exhausted by slight exertion; he suffers neck and back pain; he is permanently and totally disabled in that he cannot perform his pre-accident jobs or any others in his area; he is unable to play with his son; he is unable to sleep in the same bed with his wife and has not engaged in sexual relations with her since the accident; he suffers from a sleep disorder; and he is depressed and has contemplated suicide.

Approximately $193,000 would have compensated Mr. Stutzman for his medical bills and lost wages. However, we cannot say that the jury's decision to compensate the Stutzmans for the devastating upheaval in their daily lives resulting from the accident was not rationally connected to the evidence. We also cannot say that the jury's verdict is out of line with similar cases. *See Cygnar v. City of Chicago,* 865 F.2d 827, 848 (7th Cir. 1989) (court should consider amounts awarded in similar cases).

Several cases involving thirty to forty-year old plaintiffs permanently disabled by similar injuries resulted in comparable verdicts. *See Johnson v. Offshore Express, Inc.,* 845 F.2d 1347 (5th Cir.), *cert. denied,* 488 U.S. 968, 109

S.Ct. 497, 102 L.Ed.2d 533 (1988) ($715,888); *Monaghan v. Uiterwyk Lines, Ltd.,* 607 F.Supp. 1020 (E.D.Pa.1985) ($840,698); *Ryan v. Mobile Oil Corp.,* 157 Ill.App.3d 1069, 110 Ill.Dec. 131, 510 N.E.2d 1162 (Ill.App.Ct. 1987) ($520,000); *Clark v. City of Chicago,* 88 Ill.App.3d 760, 43 Ill.Dec. 892, 410 N.E.2d 1025 (Ill.App.Ct.1980) ($1,102,000); *Andrews v. Mosley Well Service,* 514 So.2d 491 (La.Ct. App.), *cert. denied,* 515 So.2d 807 (La.1987) ($671,000); *Fritscher v. Chateau Golf & Country Club,* 453 So.2d 964 (La.Ct.App.), *cert. denied,* 460 So.2d 604 (La.1984) ($693,-500); *Mervin v. Magney Constr. Co.,* 399 N.W.2d 579 (Minn.Ct.App.), *aff'd, en banc,* 416 N.W.2d 121 (Minn.1987) ($750,000). Viewed with a deferential eye and in the context of other relevant cases, we uphold the jury's verdict.[2]

### III. Evidentiary Rulings

The defendants argue that several erroneous evidentiary rulings made below require a new trial. We conclude that a new trial is unnecessary, as is an extensive discussion of the defendants' challenges.

### A. Dr. Abel

██ During trial, Dr. Abel, Mr. Stutzman's family physician, testified that in his opinion Mr. Stutzman was incapable of performing any type of work available to an Amishman in Mr. Stutzman's community, Wakarusa, and the surrounding areas. The defendants argue that this testimony should not have been admitted for two reasons: (1) an opinion regarding jobs available in a particular market must be rendered by an expert and Dr. Abel was not qualified to render such an opinion, and (2) Dr. Abel was listed as an expert on Mr. Stutzman's medical condition only, not his ability to obtain a job, and thus the plaintiffs failed to comply with relevant discovery rules.

We need not address the merits of the defendants' claims because, even assuming that the trial court erred by admitting Dr.

2. The defendants also argue that improper remarks by plaintiffs' counsel produced a verdict marred by passion and prejudice. We do not believe that any prejudicial impact resulted from the alleged improprieties in light of the judge's cautionary instructions to the jury. *See United States v. Van Wyhe,* 965 F.2d 528, 532 (7th Cir. 1992) (jury presumed to follow cautionary instructions).

Abel's testimony on this issue, any error was harmless. Dr. Larry Grabb, a vocational expert, testified that Mr. Stutzman was totally disabled in that he was incapable of continuing his pre-accident jobs and there was no job in Mr. Stutzman's geographic area that he could perform. "[A]dmission of cumulative evidence is not grounds for reversal absent a showing of prejudice." *United States v. Braxton*, 877 F.2d 556, 561 n. 2 (7th Cir.1989). *See also United States v. Davis*, 838 F.2d 909, 920–21 (7th Cir.1988). Dr. Abel's testimony was cumulative and the defendants have failed to show they were prejudiced by its admission.

### B. Dr. Klaassen

According to the defendants, the trial court erred by admitting Dr. Klaassen's testimony regarding an impairment rating because the plaintiffs failed to comply with Federal Rule of Civil Procedure 26(e)(1)(B). We need not address this argument, however, because the defendants waived it below. The defendants correctly point out that a motion in limine may be sufficient to preserve an issue for appeal despite the absence of a contemporaneous trial objection. *Cook v. Hoppin*, 783 F.2d 684, 691 n. 2 (7th Cir. 1986). But in this case, defense counsel specifically withdrew his objection to Dr. Klaassen's testimony during a hearing on the motion in limine which sought to exclude the testimony. The trial court asked defense counsel, "If I understand correctly, the objection runs only to the exhibits and not to the testimony of the impairment rating. Is that correct . . . ?" Defense counsel's unequivocal answer of "yes" waived this argument.

### C. Jeanette Sammuels

■ During trial, Jeanette Sammuels, a physical therapist, gave testimony about her evaluation of Mr. Stutzman. She also described generally the benefits of physical therapy. Ms. Sammuels, however, was not permitted to testify that she had a plan, which if implemented, could improve Mr. Stutzman's strength and coordination to the point where he could resume light farming duties. The trial court sustained the plaintiffs' objections to such testimony because it offered a medical prognosis that a physical therapist was not qualified to render. The defendants claim the trial court's decision constitutes reversible error. We disagree.

We afford wide latitude to the district court to qualify expert witnesses and to admit or exclude expert testimony. *Bob Willow*, 872 F.2d at 797; *Jones v. Hamelman*, 869 F.2d 1023, 1028 (7th Cir.1989). The defendants do not cite any cases which directly support their conclusion that the trial court abused its discretion. Rather, the defendants direct us to two cases from state jurisdictions which involved the testimony of physical therapists. *Moore v. Missouri Pacific Ry. Co.*, 825 S.W.2d 839 (Mo.1992); *Bolton v. CNA Ins. Co.*, 821 S.W.2d 932 (Tenn. 1991). Neither case furthers the defendants' position.

In *Moore*, the court held only that a physical therapist could properly qualify as an expert on the operation of a machine and the administration of a test using that machine. 825 S.W.2d at 844. The court specifically relied on the facts that the therapist did not offer an opinion on the patient's condition and that the task of interpreting the test results was left to the physician. *Id.* In *Bolton*, the court held that a physical therapist *was not competent* to give an expert opinion on the permanence and extent of the plaintiff's disability. 821 S.W.2d at 938. The trial court did not abuse its discretion by limiting Ms. Sammuels' testimony in this case.

### D. Dr. Frank

■ Prior to trial, the plaintiffs, pursuant to Federal Rule of Evidence 609(b), gave notice to the defendants that they intended to impeach defense expert, Dr. Frank. The impeachment evidence included evidence of a prior criminal conviction for making a false statement, as well as evidence that Dr. Frank had denied ever being convicted of a crime, under oath, during a deposition only the week before. The defendants filed a motion in limine to exclude evidence of Dr. Frank's conviction because it was over ten years old. Rule 609(b) excludes evidence of prior convictions greater than ten years old "unless the court determines, in the interests

of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." As with all evidentiary rulings, we review the trial court's decision only for a clear abuse of discretion. *Carroll v. Acme–Cleveland Corp.,* 955 F.2d 1107, 1112 (7th Cir.1992).

After careful consideration, the trial court denied the defendants' motion concluding that the probative value of the evidence substantially outweighed its prejudicial value. In making its determination, the district court reasoned that the recent false statement under oath was quite probative and, because it could not be discussed without mentioning the underlying conviction, the conviction would be let in. We have upheld the admission of a conviction older than ten years in the past, *United States v. Townsend,* 555 F.2d 152 (7th Cir.), *cert. denied,* 434 U.S. 897, 98 S.Ct. 277, 54 L.Ed.2d 184 (1977), and we do so again today. The trial court's thoughtful analysis and conclusion do not amount to an abuse of discretion.

### IV. Conclusion

Unable to find that reversible error tainted the trial below, and unconvinced that the award was excessive, we **AFFIRM** the jury verdict for Lamar and Rhonda Stutzman.